BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE GOOGLE ANTITRUST LITIGATION | MDL No. __ |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR
TRANSFER AND CONSOLIDATION OF RELATED ACTIONS
PURSUANT TO 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407 and Judicial Panel on Multidistrict Litigation Rule 6.2(a), Plaintiff J. Jackson Paige ("Plaintiff") respectfully moves the Panel to transfer eleven related antitrust actions ("Related Actions") in two different district courts to a single district court for consolidated or coordinated pretrial proceedings.[1] Plaintiff requests that these Related Actions be transferred to and consolidated before the Honorable Amit P. Mehta in the District of Columbia, before whom the Related Action filed by the United States Department of Justice and numerous state attorneys general is currently pending.

---

[1] The Related Actions include the following:

**Government Action:** *United States v. Google LLC*, Case No. 1:20-cv-03010 (D.D.C.).

**App Purchaser Actions:** *Carr v. Google LLC, et al.*, Case No. 3:20-cv-05761 (N.D. Cal.); *Bentley v. Google LLC, et al.*, Case No. 3:20-cv-07079 (N.D. Cal.); *McNamara v. Google LLC, et al.*, Case No. 3:20-cv-07361 (N.D. Cal.); *Herrera v. Google LLC*, Case No. 3:20-cv-07365 (N.D. Cal.); *Carroll, et al. v. Google LLC, et al.*, Case No. 3:20-cv-07379 (N.D. Cal.); and *Paige v. Google LLC, et al.*, Case No. 1:20-cv-03158 (D.D.C.).

**Developer Actions:** *Epic Games, Inc. v. Google LLC, et al.*, Case No. 3:20-cv-05671 (N.D. Cal.); *Pure Sweat Basketball, Inc. v. Google LLC, et al.*, Case No. 3:20-cv-05792 (N.D. Cal.); and *Peekya Services Inc. v. Google LLC, et al.*, Case No. 3:20-cv-06772 (N.D. Cal.).

**Advertiser Actions:** *In re Google Digital Advertising Antitrust Litigation,* No. 5:20-cv-03556 (N.D. Cal.).

## INTRODUCTION

All eleven Related Actions are based on related alleged conduct, overlapping facts and stories, and the same or similar legal theories. At bottom, each plaintiff alleges that Google LLC ("Google") has engaged in a course of interrelated anticompetitive conduct, including monopolization, in its search and/or Android mobile operating system businesses. All of the Related Actions brought by private parties overlap with allegations found in the complaint filed by the United States Department of Justice and numerous state attorneys general in the United States District Court for the District of Columbia. The Related Actions thus revolve around common questions of fact and law such that transfer and consolidation is warranted.

The just and efficient conduct of these Related Actions would best be served by transfer and consolidation. It would be far more efficient for the parties and the judiciary to coordinate pretrial proceedings in a single forum before Judge Mehta, who will be adjudicating the government's case against the defendants, than for the Related Actions to be litigated in parallel in multiple courts across the country, including on both coasts. Transfer and consolidation is particularly appropriate here because many of the Related Actions are nationwide class actions and because all of the Related Actions request injunctive relief, such that the Related Actions' resolution will produce effects that are wide-reaching in scope. This motion for transfer and consolidation should therefore be granted.

## BACKGROUND

**A.      Google: Its Search Franchise, Android OS, and the Google Play Store.**

Google provides internet-related services and products, including online advertising technologies and a search engine. Many of the Related Actions also name as a defendant Alphabet

Inc., the parent entity of Google. Google is alleged to have engaged in a variety of forms of anticompetitive conduct. The conduct at stake in the private lawsuits against Google is as follows:

### Google's Search Franchise

It is alleged that Google operates the default internet search platform in the United States. At least 90% of all internet searches are conducted through Google Search. Consequently, Google is the dominant source for search advertising. Companies seeking to promote their products or services online are *de facto* required to purchase search advertising space from Google. Google is alleged to have taken advantage of this dominance in the search advertising market to drive out competition in the separate market for display advertising services.

It is further alleged that because of Google's pervasive monopolistic conduct, companies that wish to place online advertisements have little choice but to pay Google for its advertising services. Google's extraction of monopoly rents is alleged to have resulted in higher advertising prices, higher consumer prices, lower payments to publishers of online advertisements, and reduced competition in the purchase and placement of online advertisements.

### Android OS and the Google Play Store

Google produces the Android mobile operating system ("Android OS"), and it is alleged that Google solidified market dominance of its Android OS through a series of contracts with distributors designed to minimize competition. For example, Google requires OEMs such as LG, Motorola, and Samsung to enter "anti-forking agreements." These agreements specifically forbid OEMs from developing or distributing versions of Android that do not comply with onerous Google-controlled technical standards. As a result of Google's anticompetitive practices, Android OS represents over 95 percent of licensable mobile operating systems for smartphones and tablets in the United States.

It is further alleged that Google has required that mobile device OEMs pre-install the Google Play Store on all mobile devices and that Google refuses to allow any rival app store to be downloaded from the Google Play Store. Because the Google Play Store is the primary way users install applications on Android OS devices, the Play Store effectively functions as a gatekeeper for software distribution on all mobile devices running Android OS. As a result of its monopolistic conduct, Google has extracted supracompetitive prices for its Android app distribution services and in-app purchases made through the Google Play Store, including a 30 percent commission on sales of paid apps and a 30 percent fee for in-app purchases.

**B.     The Eleven Related Actions.**

A variety of entities have brought suits alleging that Google has engaged in related forms of anticompetitive conduct. The actions regarding Google's alleged anticompetitive, monopolistic conduct can be broken down as follows:

- **Government Action:** The United States Department of Justice and numerous state attorneys general have brought suit challenging allegedly anticompetitive conduct and practices by Google, including in regard to its search franchise and Android OS and Play Store.

- **App Purchaser Actions:** Persons and entities that purchased or subscribed to applications or purchased content on applications available via the Google Play Store have brought suit alleging that they paid overcharges as a result of Google's allegedly anticompetitive conduct and request injunctive relief.

- **Developer Actions:** Application developers that sold applications via Google's Play Store have brought suit for financial losses suffered as a result of Google's allegedly anticompetitive conduct and/or request injunctive relief.

- **Advertiser Action:** Persons and entities that purchased digital advertising services from Google have brought suit for financial losses allegedly suffered as a result of anticompetitive conduct engaged in by Google and request injunctive relief.

## ARGUMENT

**I.     The Panel Should Transfer and Consolidate the Related Actions Pursuant to 28 U.S.C. § 1407.**

Transfer and consolidation is appropriate here because the factual allegations in the eleven Related Actions unquestionably overlap. Under 28 U.S.C. § 1407, when actions "involving one or more common questions of fact are pending in different districts," the Panel may transfer the cases to a single district for consolidated pretrial proceedings. 28 U.S.C. § 1407(a). The Panel "shall" order transfer and consolidation when it determines that a transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id*. Each of these criteria is easily satisfied here.

**A.     The Related Actions Involve Common Questions of Fact and Law.**

The Related Actions are deeply interrelated as far as both the allegations at stake and proposed remedies are concerned. In addition to relating to a common course of conduct by Google that is alleged to be illegal under Section 2 of the Sherman Act, among other statutes and causes of action, a number of the various Related Actions are class actions that are nationwide in scope, and all of the Related Actions request injunctive relief.

Where antitrust class actions involve common questions of fact, this Panel has found that "centralization under Section 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation" and is "necessary in order to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Visa/MasterCard Antitrust*

*Litigation*, 295 F.Supp.2d 1379, 1380 (J.P.M.L. 2003). Although the allegations in each Related Action vary according to the emphasis placed on related anticompetitive conduct by Google, each of the Related Actions rests on core factual allegations and legal theories that overlap with the anticompetitive, single-firm conduct alleged in the complaint filed by the Department of Justice and numerous state attorneys general in the United States District Court for the District of Columbia. The overlap among the Related Actions includes that:

- Plaintiffs all assert claims under Section 2 of the Sherman Act, among other statutes and causes of action asserted by various plaintiffs;
- All plaintiffs request some form of injunctive relief;
- Multiple private plaintiffs request some form of damages relief; and
- The putative classes in multiple Related Actions overlap in whole or in part.

**B.     Transfer Is Necessary to Coordinate and Avoid Inconsistent Rulings.**

The Related Actions present factual and legal issues, the resolution of which will have ramifications that are nationwide in scope and effect. Because many of the Related Actions are nationwide class actions, consolidation should occur so that lead counsel is appointed only once for each class, in order to avoid a potential reverse auction. All of the Related Actions involve requests for injunctive relief, and the only sensible procedure is that this relief, which will be nationwide in its applicability if granted, is adjudicated in the context of consistent pre-trial rulings and procedures across the Related Actions.

Antitrust class action cases have repeatedly been found by the Panel to be appropriate for consolidation to eliminate duplicative discovery and prevent inconsistent pretrial rulings. *See In re Intern. Air Transp. Surcharge Antitrust Litigation*, 460 F.Supp.2d 1377 (J.P.M.L. 2006); *In re Parcel Tanker Shipping Services Antitrust Litigation*, 296 F.Supp.2d 1370 (J.P.M.L. 2003). *See*

*also In re Peruvian Road Litigation*, 380 F. Supp. at 798 (transfer was necessary to "eliminate the possibility of inconsistent decisions"). Antitrust actions involving allegations that Microsoft leveraged its Windows operating system dominance to gain an advantage in the Internet browser market were found by the Panel to be appropriate for consolidation. *See* Transfer Order, *In re Microsoft Corp. Windows Operating Systems Antitrust Litigation*, MDL 1332 (J.P.M.L. Apr. 28, 2000). The allegations in these Microsoft cases parallel the allegations here that Google uses its dominance in Search and Android OS to extract supracompetitive profits via the Play Store.

      **C.    Transfer Would Be Convenient For The Parties And Witnesses And Would Promote Judicial Efficiency.**

It would be a waste of judicial resources to have multiple judges address the same factual and legal issues simultaneously. It would be equally wasteful to have the parties and their counsel litigating the same issues in multiple fora. The Panel has found that the convenience requirement is met when transfer and consolidation or coordination prevent duplicative discovery and inconsistent pretrial rulings. See *In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig Gold*, 38 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("centralization will eliminate duplicative discovery . . . prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary."). Centralizing the Related Actions for pretrial proceedings will eliminate duplicative discovery because the plaintiffs in the Related Actions will seek to develop similar evidence, including evidence of Google's alleged monopolization. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (holding that "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings (particularly with respect to class certification and preliminary injunctive relief); and conserve the resources of the parties, their counsel and the judiciary" where at least 25 related actions by direct purchaser plaintiff classes, indirect purchaser plaintiff classes,

and individual actions raised "virtually identical factual questions" concerned Keurig Green Mountain, Inc.'s unlawful monopolization of the relevant market.); *In re Online DVD Rental Antitrust Litig.*, 609 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009) (cases "share factual questions arising out of allegations that defendants conspired to divide the online DVD rental market in violation of federal antitrust laws. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.").

**II.     The Related Actions Should Be Transferred to and Consolidated in the District of Columbia.**

   **A.     The District of Columbia Is The Most Appropriate Venue For Adjudication of The Related Actions.**

The Panel has frequently found that the location of an ongoing government action is an important factor in selecting a transferee court. *See, e.g.*, *In re Liquid Aluminum Sulfate Antitrust Litig.*, 159 F. Supp. 3d 1382, 1383 (J.P.M.L. 2016) (transferring to the district where "[a] related criminal action is pending" and "a majority of actions already are pending"); *In re Polyurethane Foam Antitrust Litig.*, 753 F. Supp. 2d 1376, 1378 (J.P.M.L. 2010) (transferring to the district of an ongoing government investigation provided "efficiencies in the pretrial proceedings of the private lawsuits"). The efficiencies here are likely to be even greater, since the U.S. Department of Justice and numerous state attorneys general have brought a civil suit that will likely generate evidence usable by the plaintiffs in the private Related Actions, but may also seek injunctive relief that overlaps with that sought in the private Related Actions.

As a general matter, the District Court for the District of Columbia has considerable expertise handling the myriad issues presented by complex, multidistrict litigation, in general, and antitrust class actions, specifically. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*,

MDL No. 1869., No. 1:07-mc-00489-PLF-GMH (D.D.C.); *In re Papst Licensing GMBH & Co. KG Litig.*, MDL No. 1880, Misc. No. 07-00493 (RMC) (D.D.C.); *In re Fed. Nat'l Mortgage Assoc. Securities, Derivative & ERISA Litig.*, MDL No. 1668, No. 04-1639 (RJL) (D.D.C.); *In re Endangered Species Act Section 4 Deadline Litig.*, MDL No. 2165, No. 1:10-mc-00377-EGS (D.D.C.); *In re Health Mgmt. Assocs., Inc. Qui Tam Litig.*, (No. II), No. 1:14-mc-00339-RBW (D.D.C.). The District is, therefore, ideally suited to oversee this complicated MDL from a procedural perspective.

As mentioned above, this Panel frequently has found that the location of a pending government investigation is an important factor in selecting a transferee court. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 753 F. Supp. 2d 1376, 1378 (J.P.M.L. 2010) (finding the presence of grand jury proceedings and government investigation in the district provided efficiencies in the pretrial proceedings of the private lawsuits); *In re: Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004) ("The presence of government investigation and federal grand jury in" a district "tilts toward centralization in" that district); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (selecting appropriate transferee forum based on, inter alia, the site of the government investigation); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) (finding that the fact that the grand jury convened in the District of Hawaii was "an important factor favoring th[at] District"); *In re Refrigerant Gas Antitrust Litig.*, 334 F. Supp. 996, 997 (J.P.M.L. 1971) (despite the fact that the government's criminal action had been stayed shortly after filing and no discovery had commenced, subsequent private class actions were transferred to district in which grand jury action was proceeding); *In re Ampicillin Antitrust Litig.*, 315 F. Supp. 317, 319 (J.P.M.L. 1970) (when

selecting a transferee district, "[p]erhaps the most important factor is the pendency of the Government action.").

The Panel's decision in *In re Hawaiian Hotel* demonstrates the often-dispositive nature of this factor. In spite of the general inconvenience of the District of Hawaii as a forum, the Panel in *Hawaiian Hotel* transferred to and consolidated related class actions in the District of Hawaii because it was where the government had brought suit and therefore could "best facilitate the coordination of the private actions with the seminal Government civil action that [wa]s still pending there." 438 F. Supp. at 936; *see also In re South Central States Bakery Prods. Antitrust Litig.*, 433 F. Supp. 1127, 1130 (J.P.M.L. 1977); *In re Griseofulvin Antitrust Litigation*, 395 F. Supp. 1402, 1403 (J.P.M.L. 1975).

### B. Judge Mehta Is Experienced in Antitrust Litigation and Is Not Currently Assigned To Any MDL Actions.

Judge Mehta adjudicated the Federal Trade Commission's suit to enjoin a proposed merger between Sysco Corporation and US Foods. Ultimately, Judge Mehta issued an injunction blocking the proposed transaction in a lengthy ruling. *See Fed. Trade Comm'n v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015). In addition, a number of the Related Actions are class actions, and Judge Mehta possesses experience in adjudicating complex class action litigation. *See Molock v. Whole Foods Market, Inc.*, Case No. 1:16-cv-02483 (putative class action against employer, alleging breach of contract, breach of duty of good faith and fair dealing, unjust enrichment, failure to pay wages upon discharge, fraud, and related claims); *Harris, et al., v. Medical Transportation Management, Inc.*, Case No. 1:17-01371 (putative class action on behalf of drivers who allege that they were underpaid in violation of federal and local wage laws).

    **C.    The District of Columbia Is A Convenient Forum For The Parties And Witnesses.**

The District of Columbia possesses a variety of transportation entry points for the convenience of the parties and witnesses. The District of Columbia is located near three airports and contains a train station. Google maintains an office in the District of Columbia and has sought to do business with the U.S. military.[2] Witnesses and documents will be available to litigants in the District of Columbia as a result of the pending government Related Action. Appearances on behalf of Google in various Related Actions have been made by D.C.-based attorneys at major law firms, including Wilson Sonsini Goodrich & Rosati; Ropes & Gray LLP; Morgan, Lewis & Bockius LLP; and Williams & Connolly LLP. In fact, Washington, D.C. serves as the headquarters of Williams & Connolly LLP.

    **D.    Any Subsequently Filed Tag-Along Actions Should Be Transferred To The District Of Columbia.**

Plaintiff anticipates that additional "copycat" complaints may be filed in the coming weeks. Plaintiff respectfully requests that any such subsequently filed actions be treated as tagalong actions under Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, subject to consolidation in the same venue as these actions in order to "promote the just and efficient conduct of the cases." 28 U.S.C. § 1407.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Panel transfer the Related Actions to a single district court for consolidated or coordinated pretrial proceedings under 28

---

[2] Joshua Brustein and Mark Bergen, *Google Wants to Do Business With the Military—Many of Its Employees Don't*, Nov. 21, 2019, Bloomberg, *available at* https://www.bloomberg.com/features/2019-google-military-contract-dilemma/.

U.S.C. § 1407. Plaintiff specifically requests that the Panel order the cases transferred to the District of Columbia and consolidated before the Honorable Amit P. Mehta.

Dated: November 5, 2020                                 Respectfully submitted,

                                                 */s/ Jonathan W. Cuneo*
                                                 Jonathan W. Cuneo
                                                 Victoria Sims
                                                 Blaine Finley
                                                 **CUNEO GILBERT & LADUCA, LLP**
                                                 4725 Wisconsin Ave., NW Suite 200
                                                 Washington, DC 20016
                                                 202-789-3960
                                                 jonc@cuneolaw.com
                                                 vicky@cuneolaw.com
                                                 bfinley@cuneolaw.com

                                                 Gerard V. Mantese
                                                 Kathryn Eisenstein
                                                 **MANTESE HONIGMAN, P.C.**
                                                 1361 E. Big Beaver Road
                                                 Troy, MI 48083
                                                 Phone: (248) 457-9200 ext. 203
                                                 Fax: (248) 457-9201
                                                 gmantese@manteselaw.com
                                                 keisenstein@manteselaw.com

                                                 *Counsel for Plaintiff J. Jackson Paige*