BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: | ) MDL NO. 2981 |
| | ) |
| **GOOGLE INC., ANTITRUST** | ) |
| **LITIGATION** | ) |

**MEMORANDUM OF *IN RE GOOGLE DIGITAL ADVERTISING* PLAINTIFFS IN OPPOSITION TO THE MOTION FOR TRANSFER TO AND CONSOLIDATION OF RELATED ACTIONS IN THE DISTRICT OF COLUMBIA**

Michael Devaney, the Hanson Law Firm, PC, Vitor Lindo, Michael Stellman, and Surefreight Global, LLC, Plaintiffs in *In re Google Digital Advertising Antitrust Litigation*, No. 5:20-cv-03556-BLF, a consolidated class action pending in the Northern District of California before the Honorable Beth Labson Freeman (the "Digital Advertising Case"), oppose J. Jackson Paige's ("Movant's") motion for transfer and centralization under 28 U.S.C. § 1407 (Dkt. 1, the "Motion"). The Digital Advertising Case does not overlap with the remaining cases in this proposed MDL, all of which bring antitrust claims based on the purchase and sale of mobile apps ("Mobile App Cases.")  The Digital Advertising Plaintiffs oppose centralization altogether, but in the event an MDL for those Mobile App Cases is created, the Digital Advertising Case should not be a part of it.  In the unlikely event that an MDL including the Digital Advertising Case is created, the Northern District of California would be the appropriate venue.

I.     **BACKGROUND**

This proposed MDL involves three distinct sets of litigation against Googlethat were initiated this year: (1) class actions involving Google's alleged anticompetitive conduct in connection with its app store (which were filed starting August 13, 2020); (2) class actions involving Google's anticompetitive conduct in online display advertising markets (which were

filed starting May 27, 2020); and (3) the U.S. Department of Justice's enforcement action alleging Google's anticompetitive conduct in online search and search advertising markets (which was filed October 20, 2020). These three sets of litigation involve different alleged conduct in different markets. None of the class actions parallels the DOJ's search-focused action.

Plaintiffs filed the Digital Advertising case on May 27, 2020. (N.D. Cal. No. 5:20-cv-03556-BLF, Dkt. 1.) A second case was filed on June 22, 2020 (N.D. Cal. No. 5:20-cv-04130, Dkt. 1), and the Court on August 11, 2020 entered the parties' stipulation to consolidate these two Digital Advertising class actions ( N.D. Cal. No. 5:20-cv-03556-BLF, Dkt. 26). Plaintiffs' consolidated Digital Advertising Case proceeding in the Northern District of California alleges Google unlawfully monopolized the market for intermediary services in brokering the placement of online display advertisements. *Id.*, Dkt. 35. In addition, following the DOJ's case filing, two other similar Digital Advertising class actions were filed in the District of Columbia District Court, and then voluntarily dismissed. *See Grand Atlas LLC v. Google LLC*, D.D.C. No. 1:20-cv-03057-TNM, Dkts. 1, 7 (filed Oct. 22, 2020; voluntarily dismissed Nov. 6, 2020); *Royal Disposable Medical & Safety Supplies, Inc. v. Google LLC*, D.D.C. No. 1:20-cv-03291-RJL, Dkts. 1, 5 (filed Nov. 13, 2020; voluntarily dismissed Nov. 20, 2020).

The consolidated Digital Advertising Case now pending in the Northern District of California is the only class action at issue here that involves online display advertising, and it is more developed procedurally than the Mobile App Cases. The Digital Advertising Case was consolidated on August 11 (*id.*, Dkt. 26); Plaintiffs filed a consolidated complaint on September 25 (*id.*, Dkt. 35); the parties appeared before Judge Freeman for a case management conference on September 24 (*id.*, Dkt. 35); and the parties have cooperated to negotiate discovery and other

case management orders. The parties also have briefed certain discovery issues (*id.*, Dkts. 29, 37, 42, 43), and Google moved to dismiss the Consolidated Complaint on November 9 (*id.*, Dkt. 41). The parties then negotiated a stipulation for the Digital Advertising Plaintiffs to file a First Amended Consolidated Complaint by December 4. *Id.*, Dkt. 45.

**II.     CENTRALIZATION AND TRANSFER IS UNNECESSARY AND UNWARRANTED.**

The MDL statute identifies three relevant factors in the centralization decision: whether there are common questions of fact; whether transfer is convenient for the parties; and whether transfer will promote judicial efficiency, economy, and fairness. 28 U.S.C. § 1407(a). Centralization here is inappropriate because the actions in question allege *different* anticompetitive conduct in *separate* markets. As a result, common questions of fact are nonexistent or at most incidental. Nor would transfer in these circumstances be convenient for the parties or promote the just and efficient progress of these cases.

With respect to the Digital Advertising Case, moreover, centralization is inappropriate—there have only been four cases filed, and the only two that were not voluntarily dismissed have been consolidated, with substantial case activity having already occurred. "'[C]entralization under § 1407 should be the last solution after considered review of all other options.'" *In re Kmart Corp. Customer Data Sec. Breach Litig.*, 109 F.Supp.3d 1368, 1368-69 (J.P.M.L. 2015). "These options include . . . voluntary cooperation and coordination among the parties and the involved courts to avoid duplicative discovery or inconsistent pretrial rulings." *Id.* at 1369. The moving party bears the burden of showing that transfer to any particular district, or centralization at all, is necessary in the interests of justice. *In re Best Buy Co.,* 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011). Movant has not met this burden.

### A. The Digital Advertising, Mobile App, and DOJ Cases Do Not Involve Common Questions of Fact.

The actions at issue involve *different* transactions, market definitions, business considerations, economic realities, and historical conduct by different divisions within Google. Movant's attempt to tie the actions together using the broadest of generalities falls short: "Plaintiffs all assert claims under Section 2 of the Sherman Act . . . request some form of injunctive relief; [m]ultiple private plaintiffs request some form of damages relief; and [t]he putative classes in multiple Related Actions overlap in whole or in part." Mot. at 6.

But the class proposed in the Digital Advertising Case does *not* overlap with the class in any of the other purportedly related actions. *See* N.D. Cal. No. 5:20-cv-03556-BLF, ECF No. 35, ¶ 146 (defining class to comprise those who used Google's display advertising services to place display ads). Moreover, the Panel typically considers overlapping facts, not the general nature of claims, in considering whether an MDL is needed. Contrary to Movant's sweeping claim, it is because certain antitrust class actions involved the same alleged anticompetitive *conduct* in the *same market* that such "actions have 'repeatedly' been found by the Panel to be appropriate for consolidation to eliminate duplicative discovery and prevent inconsistent rulings." *Id.* By the same token, the Panel has long recognized it is inappropriate to centralize antitrust actions arising in distinct markets. *See, e.g.*, *In re IBM Antitrust Litig.*, 328 F. Supp. 509 (J.P.M.L. 1971).

"For antitrust purposes, a 'market is composed of products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered.'" *Paladin Assocs. v. Mont. Power Co.,* 328 F.3d 1145, 1163 (9th Cir. 2003). The relevant market in the Digital Advertising Case is "the market for online display advertising services, encompassing the overall system or process that connects online advertisers and publishers (including Google)." *See* N.D. Cal. No. 5:20-cv-03556-BLF, ECF No. 35, ¶ 117.

4

Google's central conduct at issue also stands apart from its mobile-app-related conduct: "acquiring rivals in the online advertising space, conditioning access to its search-results data and YouTube video advertising platform upon the purchase of its separate display advertising services, and ensuring those systems were not compatible with those of its competitors in online advertising." *Id*. ¶ 1. Plaintiffs' Digital Advertising Case does not seek to examine Google's business decisions relating to the app store; instead, the Advertising Plaintiffs are purchasers of *digital advertising* services. *Id*. ¶¶ 7-12. Among other distinctions, because of the different markets in question, the injunctive relief sought on behalf of Plaintiffs and class members in the Digital Advertising Case will be entirely different from that sought by app developers or purchasers.

Of the eleven lawsuits filed, only the Digital Advertising Case relates to Google's conduct in a digital advertising market. All of the other actions (leaving aside the DOJ action) do not even address advertising at all but instead revolve around a distinct product market: the market for purchase and sale of mobile apps. Those ten actions—*Epic Games, Inc. v. Google LLC, et al.,* No. 3:20-cv-05671 (N.D. Cal.); *Carr v. Google LLC, et al.,* No. 3:20-cv-05761 (N.D. Cal.); *Pure Sweat Basketball, Inc. v. Google LLC, et al.*, No. 3:20-cv-05792 (N.D. Cal.); *Peekya Services, Inc. v. Google LLC, et al.,* No. 3:20-cv-06772 (N.D. Cal.); *Bentley, et al. v. Google LLC, et al.,* No. 3:20-cv-07079 (N.D. Cal.); *McNamara v. Google LLC, et al.,* No. 3:20-cv-07361 (N.D. Cal.); *Herrera v. Google LLC*, No. 3:20-cv-07365 (N.D. Cal.); *Carroll, et al. v. Google LLC, et al.*, No. 3:20-cv-07379 (N.D. Cal.); *Paige v. Google LLC, et al.*, No. 1:20-cv-03158 (D.D.C.); and *Stark v. Google LLC, et al.*, No. 5:20-cv-8309 (N.D. Cal.)—define the relevant markets as "the Android Mobile App Distribution Market" and "Android In-App Payment Processing Market." *Carr*, *Bentley*, and *Carroll* also include the relevant markets of "mobile

devices and their accompanying operating system platforms" and "licensable mobile operating system platforms"—but none involves advertising.

The plaintiffs in each of those ten lawsuits are either purchasers of app store products (Motion Exhibits B, E, F, G, H, K, and Tag-along Case at MDL Dkt. 31-2) or developers that sold their app and related products via the Google Play Store (Motion Exhibits A, C, D). Those complaints describe Google's relevant anticompetitive conduct generally as "a series of contracts with device manufacturers and app developers, … that make it nearly impossible for consumers to locate alternate ways to download apps." *See, e.g.*, N.D. Cal. No. 3:20-cv-07379-JD, ECF No. 1, ¶ 9. The complaints also name other defendants based on their "contracts with all app developers that distribute their apps through the Google Play Store and therefore a party to the anticompetitive contractual restrictions at issue in this suit." *See e.g., Id.* ¶¶ 17-20. Another defendant in certain of these Mobile App Cases, Google Payment Corp., "provides in-app payment processing services to Android app developers and Android users and collects a 30 percent commission on many types of processed payments, including payments for apps sold through the Google Play Store and in-app purchases made within such apps." *See, e.g.*, *id.* ¶ 21. The focus of the ten app-related cases is entirely on Google's conduct as to *mobile devices*. Thus, for example, in comparing Google with Microsoft, Movant limits its comparison to the Google Play Store—with no mention of advertising. Mot. at 7.

In addition, several of the Mobile App Cases assert unique claims, *see, e.g.*, *Carr* and *Bentley* (claiming 35 violations of state and federal law against various defendants); *Carroll*, (claiming 34 violations of state and federal law against various defendants). The Digital Advertising Plaintiffs only allege violations of Section 2 of the Sherman Act and California's Unfair Competition Law against Google LLC and its corporate parent.

6

Government investigations have also examined digital advertising and mobile-app markets and treated them as separate and unrelated. The antitrust investigation conducted by the U.S. House of Representatives, for instance, separated each relevant market, including the markets for search advertising, display advertising, and mobile-app sales.[1] Similarly, the Motion itself concedes by omission that digital advertising is distinct: "At bottom, each plaintiff alleges that Google . . . has engaged in a course of interrelated anticompetitive conduct, including monopolization, in its search and/or Android mobile operating system businesses." Mot. at 2. To the contrary, while the Digital Advertising Case notes in passing the data-collection advantages that Google's Android system provides (N.D. Cal. No. 5:20-cv-03556-BLF, ECF No. 35, ¶¶ 54, 62), Digital Advertising Plaintiffs do not seek relief based on Google's monopolization of search or Android mobile operating system businesses.

Movant does not and cannot identify any meaningful overlap between the ten class actions involving mobile apps and the ongoing Northern District of California proceeding involving digital advertising. Given the major differences, transfer would prejudice Plaintiffs by shoehorning their Digital Advertising Case into a single proceeding with the Mobile App Cases, and should be rejected.

### B. There Is No Risk of Duplicative Discovery or Inconsistent Decisions.

The purpose of an MDL is to avoid repetitive discovery practice, eliminate inconsistent pretrial rulings, and conserve the resources of litigants and the judiciary. Although one of the Panel's "prime considerations is often the need to avoid inconsistent ruling on similar issues, . . . [u]sually, that consideration is bolstered by the concern for duplicative and burdensome discovery leading up to the legal issues." *In re Medi-Cal*, 652 F. Supp. 2d at 1378. Here, because

---

[1] https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf

the Digital Advertising Case is based on a separate market, duplicative discovery is unlikely, any overlap in discovery will be minimal, and a ruling pertaining to claims related to the app store or mobile operating system market is unlikely to affect the Digital Advertising Case.

The plaintiffs in the Mobile App cases do not seek to develop the same evidence as the Digital Advertising Plaintiffs. The Digital Advertising Plaintiffs seek to develop evidence of Google's conduct in the online display advertising market, but the other plaintiffs seek to develop evidence relating to Google's app store—a separate business entity. In further contrast to the Digital Advertising Case and the DOJ case, the Mobile App Cases seek documents from several other listed defendants, including Google Ireland Ltd.; Google Commerce Ltd.; Google Asia Pacific Pte. Ltd; and Google Payment Corp. Just as the major distinctions between the advertising and mobile-app cases suggest a lack of duplicative discovery, so will they obviate or greatly reduce the possibility of inconsistent rulings. Hence the interests in judicial economy, efficiency, and sound case management strongly favor allowing the Digital Advertising Case to proceed independently of the ten mobile app cases.

### C. That the DOJ Filed an Enforcement Action Against Google Centering on Search and Search Advertising Markets Does Not Justify Transfer.

Government action is just one of many factors in the Panel's decision making, as the Movant's own authority recognizes. *See, e.g.*, *In re Liquid Aluminum Sulfate Antitrust Litig.*, 159 F. Supp. 3d 1382, 1383 (J.P.M.L. 2016) (transferring to the district where "[a] related criminal action is pending" and "*a majority of actions already are pending*") (emphasis added). Here, the majority of the actions in question are pending in the Northern District of California, and the DOJ enforcement action would not be part of this MDL in any event. Google must defend the DOJ action independently regardless of where the private actions are located, and the nexus of

documents and witnesses relevant to Google's conduct in all of the actions is the Northern District of California, where Google is headquartered.

### III. ON THE CURRENT POSTURE, ANY MDL SHOULD BE VENUED IN THE NORTHERN DISTRICT OF CALIFORNIA.

If the Panel nonetheless decides to create an MDL that includes the Digital Advertising Case, the Northern District of California—Google's home district—is the logical choice at this point. "The convenience of parties and witnesses" favors the Northern District of California absent overlapping governmental case filings in other jurisdictions. The Northern District of California is the location of the defendant and the most witnesses and evidence for purposes of these cases, and Judge Freeman is a capable jurist who has already consolidated the Digital Advertising Case, held a case management conference, and issued related case management orders. Further, the Digital Advertising Plaintiffs have already filed a consolidated complaint, engaged with Google on discovery and scheduling, and are briefing discovery issues and a forthcoming opposition to Google's renewed Motion to Dismiss.

### IV. CONCLUSION

For all of the foregoing reasons, the Advertising Plaintiffs respectfully request that the Panel deny the Motion.

Dated: November 27, 2020                                   Respectfully submitted,

**GIRARD SHARP LLP**                                       **AHDOOT & WOLFSON, PC**

/s/ *Adam E. Polk*                                         /s/ *Tina Wolfson*
Dena C. Sharp                                              Tina Wolfson
Jordan Elias                                               Theodore Maya
Adam E. Polk                                               Rachel Johnson
Scott M. Grzenczyk                                         2600 West Olive Avenue, Suite 500
601 California Street, Suite 1400                          Burbank, California 91505
San Francisco, CA 94108                                    Tel: (310) 474-9111
                                                           Fax: (310) 474-8585

9

Tel: (415) 981-4800  
Fax: (415) 981-4846  
dsharp@girardsharp.com  
jelias@girardsharp.com  
apolk@girardsharp.com  
scottg@girardsharp.com  

twolfson@ahdootwolfson.com  
tmaya@ahdootwolfson.com  
rjohnson@ahdootwolfson.com  

*Counsel for Plaintiffs*