# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| J. JACKSON PAIGE, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>        Defendants. | Civil Action No. 1:20-cv-03158-APM |

**DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404; AND DEFENDANTS' OBJECTION UNDER LCvR 40.5(b)(2) TO PLAINTIFF'S DESIGNATION OF ACTION AS RELATED TO UNITED STATES V. GOOGLE LLC**

Defendants Google LLC and Alphabet Inc. (collectively, "Google") respectfully move to transfer this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a), on the grounds that:

Plaintiff J. Jackson Paige ("Plaintiff") agreed to a binding mandatory forum-selection clause providing that all disputes, including those alleged in his Complaint, "will be litigated ***exclusively*** in the federal or state courts of Santa Clara County, California, USA," and that both Plaintiff and Google "consent to personal jurisdiction in those courts." Controlling Supreme Court and Circuit precedent provide that a valid forum-selection clause should be given dispositive weight in all but the most exceptional cases, and a motion to transfer under 28 U.S.C. § 1404(a) should be granted. Here, there are no extraordinary circumstances warranting a departure.

The forum selection clause aside, all factors relevant to transfer pursuant to 28 U.S.C. §1404(a) weigh in favor of transferring this case to the Northern District of California. Except for Plaintiff's Complaint, this forum has no connection with this case: Plaintiff is a Michigan

resident, and Google's principal place of business and the vast majority of its relevant witnesses are in the Northern District of California. Moreover, the Northern District of California is already presiding over ten cases arising from the same alleged facts and legal claims as asserted in Plaintiff's Complaint; the Northern District of California has experience with respect to the legal issues raised by Plaintiff's Complaint and its docket is not appreciably busier than this Court's docket; and, if anything, the Northern District of California is more convenient for witnesses and access to proof.

Google further opposes pursuant to Local Civil Rule 40.5(b)(2) Plaintiff's motion to relate his case with the action captioned *United States v. Google LLC*, No. 1:20-cv-03010-APM (the "Government Action"). Plaintiff's Complaint and the complaint in the Government Action do not allege common facts or legal claims. They challenge different alleged conduct and allege different competitive harm in different alleged relevant markets.

Accordingly, Google respectfully requests that the Court enter an order to transfer this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) and deny Plaintiff's motion to relate this case to the Government Action.

Pursuant to Local Civil Rule 7(m), Google's counsel conferred with Plaintiff's counsel before filing this Motion. Plaintiff's counsel opposes this Motion.

Dated: November 23, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

/s/ Bryan M. Killian (D.C. Bar No. 989803)

Richard S. Taffet (*pro hac vice* application filed)
101 Park Avenue
New York, NY 10178-0060
Telephone: 212.309.6000
Facsimile: 212.309.6001
Email: richard.taffet@morganlewis.com

Willard K. Tom (D.C. Bar No. 297564)
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: 202.739.3000
Facsimile: 202.739.3001
Email: willard.tom@morganlewis.com

1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: 202.373.6191
Fax: 202.739.3001
Email: bryan.killian@morganlewis.com

Brian C. Rocca (*pro hac vice* application filed)
One Market
Spear Street Tower
San Francisco, CA 94105-1596
Telephone: 415.442.1000
Facsimile: 415.442.1001
Email: brian.rocca@morganlewis.com

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J. JACKSON PAIGE, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>        Defendants. | Civil Action No. 1:20-cv-03158-APM |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO TRANSFER UNDER 28 U.S.C. § 1404; AND
DEFENDANTS' OBJECTION UNDER LCvR 40.5(b)(2) TO PLAINTIFF'S
DESIGNATION OF ACTION AS RELATED TO UNITED STATES V. GOOGLE LLC**

## I.  **INTRODUCTION**

Defendants Google LLC and Alphabet Inc. (collectively, "Google") respectfully move to transfer this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Transfer here is appropriate most notably because Plaintiff J. Jackson Paige ("Plaintiff") agreed to a binding mandatory forum-selection clause providing that all disputes, including those alleged in his Complaint, "will be litigated *exclusively* in the federal or state courts of Santa Clara County, California, USA," and that both Plaintiff and Google "consent to personal jurisdiction in those courts."  Except in exceptional circumstances not relevant here, Supreme Court and Circuit precedent confer a forum-selection clause such as this controlling weight.  *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 59-60 (2013); *see also Azima v. PAK Inv. Auth.,* 926 F.3d 870, 874-75 (D.C. Cir. 2019) (on motion to dismiss for *forum non conveniens*).

Transfer is also appropriate, the forum-selection clause aside.  This case has no connection with this forum.  It is a copycat action filed by a Michigan plaintiff against Northern California-based defendants challenging the same conduct under the antitrust laws (none of which is alleged to have occurred in this forum) and seeking to represent the same consumer class as putative class actions filed months previously in the Northern District of California.  The public interest supports transferring this case to the Northern District of California, which will be a manifestly more convenient and judicially efficient forum than if this case remained in this forum.  The Northern District of California is well-versed in antitrust law, it has greater proximity for party witnesses and easier access to relevant evidence, and its dockets are not appreciably busier than this Court's.  Moreover, if any forum has a particular local interest in the

outcome of this case (especially where no party resides and no specific conduct is alleged to have occurred in the forum), it is the Northern District of California.

The Court should therefore transfer this case to the Northern District of California pursuant to § 1404(a).

Pursuant to Local Civil Rule 40.5(b)(2), Google also separately objects to Plaintiff's designation of this action as related to *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C.) (the "Government Action"). This case and the Government Action involve different alleged conduct, allegedly causing different harm to competition, in different alleged relevant markets. No reasonable basis for relation exists.[1]

## II.   BACKGROUND

### A.   Procedural Background

Twelve antitrust cases filed against Google, including this one, challenge conduct relating to its Google Play software application ("App") store. Rocca Decl. ¶ 3. Ten of these cases are now pending in the Northern District of California.[2] *Id.* ¶¶ 4, 6-13. Among these cases are

---

[1] Plaintiff also petitioned to consolidate the Northern District of California cases with his case and the Government Action in this forum pursuant to 28 U.S.C. § 1407. A case arising under the antitrust laws where the government is the complainant, however, is not subject to multidistrict consolidation. 28 U.S.C. § 1407(g). Apparently realizing his error, Plaintiff modified his § 1407 petition to no longer request transfer, consolidation, or coordination with the Government Action. *See In re Google Antitrust Litig.*, No. 2981 (J.P.M.L. Nov. 13, 2020), ECF No. 11. Responses to the JPML petition are due November 27, 2020. Google will oppose, and understands that multiple plaintiffs in the Northern District of California cases will also oppose, including the putative App Developer class plaintiffs and at least certain of the consumer class plaintiffs. Pls.' Statement Re: Consolidation of Consumer Class Action Compls. 5, *Carr v. Google LLC*, No. 3:20-cv-05761-JD, ECF No. 77 (N.D. Cal. Nov. 17, 2020). Thus, the **sole** connection with this forum is Plaintiff's case itself.

[2] An action was recently filed on November 18, 2020, in the Central District of California. Rocca Decl. ¶ 14. Google will file a motion to transfer the Central District of California action to the Northern District of California in due course. *Id.*

seven putative consumer class actions.  *Id.* ¶¶ 4, 7, 9-13.  Additionally, three non-consumer class

cases have been filed in the Northern District of California by App Developers (two putative

App Developer class actions, and a separate action by Epic Games, an App Developer and

alleged potential competitor to Google).  *Id.* ¶¶ 4, 6, 8.[3]  Each of these cases, like Plaintiff's here,

alleges claims under federal antitrust law, and some under analogous state antitrust statutes,

claiming that Google has monopolized relevant markets for Android App distribution and

Android in-app payment processing.  *Id.* ¶¶ 6-13.

On October 8, 2020, Judge Donato consolidated the two putative App Developer class

actions and a putative consumer class action "for all pre-trial and trial purposes."  *Id.* ¶ 15.

Subsequently, two sets of App  developer plaintiffs filed a consolidated putative class action

complaint, as did two sets of consumer plaintiffs.  *Id.* ¶¶ 7-8.  On October 29, 2020, Judge

Donato entered an order directing counsel for all pending and incoming consumer class plaintiffs

to propose a plan for consolidation into a single action.  *Id.* ¶ 16.  On November 6, 2020, Epic

Games, the two App Developers, two sets of consumer plaintiffs, and Google filed a stipulation

containing a proposed case schedule for Judge Donato's consideration.  *Id.* ¶ 17; Exhibit L.  On

November 20, 2020, Judge Donato consolidated six putative consumer plaintiff class actions "for

all pretrial proceedings before th[e] Court" under the caption, *In re Google Play Consumer*

*Antitrust Litigation*, No. 3:20-cv-05761-JD (N.D. Cal.).  Rocca Decl. ¶ 19.

---

[3] Presently, nine of these cases have been assigned to Judge James Donato: six of the putative
consumer class actions, the two putative App Developer class actions, and the Epic Games, Inc.
case.  Rocca Decl. ¶¶ 4, 6-11, 13.  Yet another putative class action has been filed in the
Northern District of California, *Roberts v. Google LLC*, No. 4:20-cv-07824-DMR (N.D. Cal.),
Rocca Decl. ¶ 12, and the plaintiff in that action has moved to relate it to *Epic Games*.  *See*
Admin. Mot., *Epic Games v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal. Nov. 18, 2020),
ECF No. 100.

Google's Rule 12(b)(6) motion was filed on November 13, 2020 to dismiss the Epic and

App Developer cases.  Rocca Decl. ¶ 18.  Google's Rule 12(b)(6) motion to dismiss the putative

consumer class complaint will be filed once the remaining putative consumer class cases are

consolidated with the two original putative consumer cases, and a putative consumer class

Consolidated Second Amended Complaint is filed on the *In re Google Play Consumer Antitrust*

*Litigation* docket.  *Id.* ¶ 20.  A further status conference in connection with pending cases in the

Northern District of California will be held on December 3, 2020.  *Id.* ¶ 16.

### B.    The *Paige* Complaint

Plaintiff—a Michigan resident—filed his Complaint ("Compl.") on October 30, 2020,

more than two months after the complaints were filed in the Northern District of California by

Epic Games, and the original putative App Developer class and consumer class plaintiffs.

Plaintiff's Complaint here against Google, alleged to have its principal place of business in

Mountain View, California, Compl. ¶¶ 9-10, like the Northern District of California plaintiffs,

alleges claims under § 2 of the Sherman Act based on Google's alleged monopolization and

attempted monopolization of relevant markets defined as Android mobile Apps and in-app

purchases sold through the Google Play store.[4]  Plaintiff alleges as the basis for his claims the

very same conduct by Google, and the same purported injury as all plaintiffs in the Northern

District of California.  Like the plaintiffs in the Northern District of California cases, Plaintiff

---

[4] *Compare, e.g.*, Compl. ¶¶ 52-53, 66-67, *with* Exhibit B ¶¶ 134-41, 157-64 (alleging § 2 claims
for unlawful monopoly maintenance in the Android App distribution and Android in-app
payment processing markets), *and* Exhibit D ¶¶ 51-77 (alleging § 2 claim for monopolization
and attempted monopolization of the U.S. market for mobile Apps and in-app purchases sold in
the Android Mobile App market), *and* Exhibit E ¶¶ 57-67 (alleging § 2 claim for unlawful
monopolization of the Android mobile App distribution market), *and* Exhibit F ¶¶ 132-39, 155-
62 (alleging § 2 claim for unlawful monopolization of licensable smart mobile OS App
distribution and in-app payment processing markets).

here challenges Google's conduct related to Google's alleged refusal to allow rival App stores to

be accessed through the Google Play Store, and for competitive in-app payment processing to be

used in connection with Google Play transactions.  Also common to all cases are allegations that

Google has otherwise made it difficult to access and use alternative app stores and in-app

payment processing.[5]  As a result of this conduct, Plaintiff asserts that he, like the consumer

plaintiffs in the pending Northern District of California cases, paid a "supra competitive price for

mobile apps and in-app purchases" for Apps purchased through the Google Play store.[6]

### C.    Google Play's Terms of Service

The Google Play Store is a digital distribution service operated by Google.  Cooper Decl.

¶ 3.  It is one of the App stores available on devices running on the Android operating system.

Id.  In order to purchase apps through the Google Play Store on Android, an individual user

(such as Plaintiff) is required to have a Google Account registered on an Android device.  *Id.* ¶ 4.

Counsel to Mr. Paige has provided Google with Mr. Paige's Google Account identifier.  *Id.*  A

user of the Google Play Store such as Mr. Paige must agree to the Google Play Terms of Service

in order to purchase apps in the Google Play Store.  *Id.* ¶ 5.

In addition, on or about February 12, 2018, Google required Google Play users to accept

Google Play Terms of Service in effect at that time before re-entering the Google Play Store.  *Id.*

---

[5] *Compare, e.g.*, Compl. ¶ 53, *with* Exhibit B ¶¶ 86, 88 (alleging Google prohibits distribution of competing App stores through the Google Play store and imposes impediments to dissuade users from direct downloads of Apps), *and* Exhibit D ¶ 26 (same), *and* Exhibit E ¶¶ 26-27 (same), *and* Exhibit F ¶ 136 (same).

[6] *Compare, e.g.*, Compl. ¶ 33, *with* Exhibit B ¶¶ 124-25 (alleging "supra-competitive prices for Android Apps" and "supra-competitive prices for in-app digital content"), *and* Exhibit D ¶ 34 (alleging payment of "supra competitive price [sic] for mobile apps and in-app purchases"), *and* Exhibit E ¶ 49 (alleging antitrust injury from paying "supracompetitive prices for mobile app and in-app purchases"), *and* Exhibit F ¶¶ 120-21 (alleging payment of "supra-competitive prices" in App distribution and in-app payment processing markets).

¶ 6.  Google's records reflect that Mr. Paige accepted the Google Play Terms of Service on February 13, 2018. *Id.*  Mr. Paige would have indicated his acceptance of the Google Play Terms of Service by clicking an "Accept" button before re-entering the Google Play Store. *Id.*

The Google Play Terms of Service state that use of Google Play is "subject to" the Google Terms of Service, which are hyperlinked and readily accessible. *Id.* ¶ 8.  The Google Terms of Service included the following venue provision on the date Mr. Paige accepted them:

> The laws of California, U.S.A., excluding California's conflict of laws rules, will apply to any disputes arising out of or relating to these terms or the Services. All claims arising out of or relating to these terms or the Services will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts.

*Id.* ¶ 9.  This provision is included under the heading, "About these Terms." *Id.*  These terms are also publicly available at https://policies.google.com/terms/archive/20171025?hl=en. *Id.*

### D.    Google Play's Connection to the Northern District of California

Google's Mountain View headquarters, which includes offices in neighboring Sunnyvale (collectively referred to as "Mountain View" herein), is the strategic center of Google's business, including Google Play.  Friedland Decl. ¶ 3.  In October 2020, the Mountain View headquarters housed approximately 39,621 employees. *Id.*  In October 2020, Google also had approximately 10,280 other employees in San Francisco, California and other smaller offices also within the Northern District of California. *Id.*  Also as of October 2020, approximately 60% of Google's approximately 83,253 total U.S. employees, including engineers, product managers, marketers, executives, and staff, are based in the Northern District of California. *Id.*  Moreover, in October 2020, approximately 74% of the employees who are part of the global Google Play organization are based in the Northern District of California. *Id.* ¶ 4.  Of employees who are part of the

Google Play organization in the United States, approximately 94% are based in the Northern District of California. *Id.*

After a reasonable search, Google was not able to locate any employees in the Google Play organization who are based in Google's Washington D.C.-area offices. *Id.* ¶ 5. Twelve of the fourteen employees (86%) listed in Google's Initial Disclosures served in the Northern District of California cases are based in the Northern District of California. *Id.* ¶ 6. The other two employees are based in London, England. *Id.* None are based in or near Washington, D.C.

As a matter of Google practice, documents in Google's possession about its products and services are normally created and maintained by the employees working on those products and services. *Id.* ¶ 7. As discussed above, the employees with relevant knowledge of this litigation are based primarily in the Northern District of California. *Id.*

## III.    LEGAL STANDARDS

"Section 1404(a) authorizes a district court to transfer a civil action to any other district where it could have been brought 'for the convenience of parties and witnesses, in the interest of justice[.]'" *McGowan v. Pierside Boatworks, Inc.*, 215 F. Supp. 3d 48, 49 (D.D.C. 2016) (Mehta, J.) (quoting 28 U.S.C. § 1404(a)). "In the ordinary case in which the parties' dispute is not subject to a forum-selection clause, Section 1404(a) requires the court to weigh various public-private considerations and to decide whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice." *Id.* (quoting *Atl. Marine*, 571 U.S. at 62-63 (internal quotation marks omitted)).[7] "The calculus changes,

---

[7] The private interest factors are (1) the plaintiff's choice of forum, unless the balance of convenience strongly favors the defendant, (2) the defendant's choice, (3) whether the claim arose elsewhere, (4) the convenience of the parties, (5) the convenience of the parties' witnesses, and (6) the ease of access to sources of proof. *Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149, 156-57 (D.D.C. 2008). The public interest factors are (1) the transferee court's familiarity

however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'"  *Atl. Marine*, 571 U.S. at 63 (citation omitted).

Where there is a valid forum-selection clause, "a proper application of § 1404(a) requires that [it] be 'given controlling weight in all but the most exceptional cases.'"  *Id.* at 59-60 (citation omitted); *see also D&S Consulting, Inc. v. Kingdom of Saudi Arabia*, 961 F.3d 1209, 1213 (D.C. Cir. 2020) (explaining in connection with motion to dismiss for *forum non conveniens* that "[i]n the case of a mandatory clause, a court will enforce the clause except in the 'most unusual or rare' instance . . . ."); *Azima,* 926 F. 3d. at 874 (explaining in connection with motion to dismiss for *forum non conveniens* that a forum-selection-clause must "almost always" be enforced.  This extends even to forum-selection clauses "included in non-negotiated boilerplate contracts."  *Gipson*, 563 F. Supp. 2d at 154 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

Moreover, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  *Atl. Marine*, 571 U.S. at 64.  A plaintiff's choice of forum is accorded no weight, and "[a] court . . . must deem the private-interest factors to weigh entirely in favor of the preselected forum."  *Id.* at 63-64.  "As a consequence, a district court may consider arguments about public-interest factors only,"  but "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."  *Id.* at 64.

---

with applicable law, (2) relative congestion of dockets, and (3) whether there are local interests in deciding a local controversy.  *Id.* at 157.

"The non-movant bears the burden of demonstrating that such extraordinary circumstances exist and must show 'why the court should not transfer the case to the forum to which the parties agreed.'" *McGowan*, 215 F. Supp. 3d at 50 (quoting *Atl. Marine*, 571 U.S. at 64).

## IV.   THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

### A.   The Court Should Enforce the Parties' Forum-Selection Clause

Plaintiff agreed to a valid and mandatory forum-selection clause. The clause states that "[a]ll claims arising out of or relating to these terms or the Services will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts." Cooper Decl. ¶ 9.[8] Clauses incorporating broad language applying to "all disputes arising out of or relating to" a contract have been consistently treated as mandatory and enforced, compelling transfer. *See Gipson*, 563 F. Supp. 2d at 152, 159 (enforcing forum-selection clause "requir[ing] that 'all controversies, disputes, and claims arising' under [a pension contract] 'be submitted to the United States District Court for the District of Minnesota'"); *One on One Basketball, Inc. v. Global Payments Direct, Inc.*, 38 F. Supp. 3d 44, 47-48, 50 (D.D.C. 2014) (enforcing forum-selection clause requiring "exclusive jurisdiction" in the Northern District of Georgia or Fulton County, Georgia, state courts for "all actions arising out [sic], relating to, or in connection with" the agreement); *McGowan*, 215 F. Supp. 3d at 50-51 (enforcing as mandatory clause providing that "any dispute arising hereunder shall be resolved in Charleston County, South Carolina").

---

[8] Santa Clara County is in the Northern District of California, and Northern District of California Local Civil Rule 3-2(c) provides that antitrust class actions are assigned on a district-wide basis.

The forum-selection clause to which Plaintiff agreed in 2018 is of the same nature, but even broader. It not only includes claims "arising out of or relating to" the terms, but also to claims "arising out of or relating to" "***the Services***." Cooper Decl. ¶ 9 (emphasis added). And Plaintiff's claims plainly arise out of and relate to both the terms of service and the Google Play service itself. *See* Compl. ¶¶ 24-29. That Plaintiff's claims sound in antitrust and not contract is of no moment, particularly since the forum-selection clause here includes claims "relating to" the very services under scrutiny (*i.e.,* Google Play). *See Worldwide Network Servs., LLC v. DynCorp Int'l*, 496 F. Supp. 2d 59, 63 (D.D.C. 2007) ("Forum selection clauses have been found to encompass even non-contractual causes of action." (citations omitted)); *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 381 (S.D.N.Y. 2010) (antitrust claims subject to forum-selection clause), *aff'd*, 435 F. App'x 31 (2d Cir. 2011).

The forum-selection clause is also reasonable. It closely parallels mandatory language in analogous Google forum-selection clauses that this Court and others have held valid and enforceable in the context of granting motions to transfer under 28 U.S.C. § 1404(a). In *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 59 (D.D.C. 2014), for example, this Court enforced a forum-selection clause in YouTube's Terms of Service, "which provide[d] that '[a]ny claim or dispute between you and YouTube that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Santa Clara County, California.'" In so holding, the Court pointed out that "Google and YouTube's choice of forum has been found consistently enforceable," *id.* at 63, citing *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 246-48 (E.D. Pa. 2007) and *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493-95 (S.D.N.Y. 2006), where similar forum-selection clauses were also enforced. The Court in *Song fi* also explained that Google had valid reasons for the type of forum-selection clause addressed

there, and that is at issue here, given that hundreds of millions of users around the world use YouTube, making the clause necessary to manage litigation costs and reduce the burden of litigating all over the world. *Id.* (citations omitted). The same rationale applies here; millions of users around the world use Google Play to access Apps, and the specific forum-selection clause incorporated in the Google Play Terms of Service should be held valid and enforceable like the clause addressed in *Song fi* and other cases considering analogous Google forum-selection clauses.

In these circumstances, the forum-selection clause at issue in this case should be accorded controlling weight. *Atl. Marine*, 571 U.S. at 63. This is not the rare case where public interest factors defeat the forum-selection clause. *See id.* at 62-64; *Azima*, 926 F.3d at 880. Indeed, none of the public interest factors favor retaining the case in this forum. To the contrary, these factors strongly favor transfer to the Northern District of California. Specifically:

- The Northern District of California has significant familiarity and expertise with antitrust law and the specific claims alleged in this case. This supports transfer. *See Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 311 (D.D.C. 2015) (Mehta, J.) (explaining that a relevant public-interest factor is "the transferee court's familiarity with the governing laws" (citation omitted)).

- The pending antitrust cases in the Northern District of California alleging parallel claims and theories of liability not only confirm that forum's familiarity with the legal issues in play, they also show that transferring Plaintiff's case will serve the public interest by avoiding potential "inconsistent results and waste of judicial resources." *Stockbridge-Munsee Cmty. v. United States*, 593 F. Supp. 2d 44, 48 (D.D.C. 2009) (transferring action to forum where six challenges to the same action were pending); *see also Cont'l Grain*

*Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

- The relative congestion of dockets factor is neutral.  Although the median time from filing to disposition in civil cases in the twelve-month period ending June 30, 2020, was 10.1 months in the Northern District of California, and 5.3 months in the District of Columbia, the median time from filing to trial was 29.3 months in the Northern District of California, and 40.0 months in the District of Columbia.[9]

- Finally, no showing can be made in this case that this forum has a local interest in deciding a local controversy.  Plaintiff's Complaint defeats any showing by confirming that he is not a resident of this forum, that Google's principal place of business and the vast majority of its relevant witnesses are in the Northern District of California, and that no conduct is alleged to have occurred in this forum or involve any controversy localized to this forum.  Friedland Decl. ¶¶ 4-6.

The Northern District of California is thus "the *only* place" for Plaintiff to assert his claims.  *D&S Consulting*, 961 F.3d at 1213 (emphasis in original).

### B.     The Forum-Selection Clause Aside, Transfer Is Warranted Because the Northern District of California Is More Convenient

Even aside from the controlling weight of the forum-selection clause, and the strong weight of public interest factors favoring transfer, Plaintiff here cannot meet its burden to defeat

---

[9] United States District Courts – National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf.

transfer under § 1404(a) by pointing to any private interest factors. They, too, strongly weigh in favor of transfer.

*First*, there is no question that Plaintiff could have filed the action in the Northern District of California. *See Stevenson v. Delta Airlines, Inc.*, 251 F. Supp. 3d 265, 268 (D.D.C. 2017) (Mehta, J.) (explaining that "[t]he court first must determine whether the transferee district is one where the action 'might have been brought'" (citation omitted)). Other plaintiffs filed complaints in that district where Google's principal place of business is located. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]").

*Second*, other than the fact that it was filed here, this case has no connection with this forum. Plaintiff is a Michigan resident who does not allege that any conduct relevant to his claims took place in the District of Columbia. Compl. ¶ 8. "Although a plaintiff's choice of forum ordinarily is accorded deference in the balancing of interests, that deference is diminished when the plaintiff has not selected [his] home forum and 'there is an insubstantial factual nexus between the case and the plaintiff's chosen forum.'" *Stevenson*, 251 F. Supp. 3d at 269 (quoting *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 192 (D.D.C. 2012)); *see also Gulf Restoration*, 87 F. Supp. 3d at 312 (citing cases for the proposition that "[t]his court consistently has shown less deference to entities that chose this forum but did not reside here"). This should make the Court's transfer decision "an easy one." *Stevenson*, 251 F. Supp. 3d. at 269.

Google, on the other hand, is based in the Northern District of California, and that forum is more convenient to access proof from Google and for Google witnesses. Friedland Decl. ¶¶ 4-7 (explaining that approximately 94% of employees who are part of the Google Play

organization in the United States are based in the Northern District of California, no employees

in the Google Play organization are based in Google's Washington, D.C.-area offices, and

employees with relevant knowledge of this litigation are based primarily in the Northern District

of California).  Convenience for Plaintiff and third parties is neutral; Plaintiff is resident in

neither, and third parties are located throughout the world.  *See, e.g.*, Compl. ¶¶ 20, 23

(discussing Android OS adoption by, and Google's alleged agreements with, LG and Samsung).

Google's preference for the Northern District of California is legitimate and this also

weighs in favor of transfer.  *See Gulf Restoration*, 87 F. Supp. 3d at 313 ("A defendant's 'choice

of forum must be accorded some weight' if the defendant presents legitimate reasons for

preferring to litigate the case in the transferee district.'" (citation omitted)).  Google is now

facing claims in eleven other actions that involve the same conduct and theories as Plaintiff

alleges here.  For purposes of discovery, Plaintiff's case likely will be consolidated with the ten

cases in the Northern District of California, allowing all cases to proceed pre-trial most

efficiently.  Also upon transfer, Plaintiff's case likely will be consolidated for all purposes with

the other seven putative consumer class actions and his claims will be included in a Consolidated

Second Amended Complaint.  Google will then be able to defend all consumer claims most

efficiently, starting with a motion to dismiss and challenging class certification.

Accordingly, the balance of private and public interests strongly weighs in favor of

transferring Plaintiff's action pursuant to 28 U.S.C. § 1404(a).

*             *             *

In sum, transfer of this case to the Northern District of California pursuant to 28 U.S.C.

§ 1404(a) is compelled by the parties' agreement to that forum as the exclusive one for

addressing the claims that are the subject of Plaintiff's Complaint.  And, Plaintiff can point to no

factor that would render this the exceptional case where public or private interests defeat the controlling nature of the parties' forum-selection agreement.  Transfer of this case is appropriate.

## V.   GOOGLE OBJECTS TO RELATING THE *PAIGE* COMPLAINT TO THE GOVERNMENT ACTION

Google further objects to relation of this case to the Government Action pursuant to Plaintiff's Notice of Designated of Related Civil Case.[10]  "The burden on the party claiming relation is heavy . . . ."  *Comm. on Judiciary v. McGahn*, 391 F. Supp. 3d 116, 119 (D.D.C. 2019) (citation omitted).  "Deviating from that foundational principle is appropriate only if the relationship between the two cases is certain."  *Id.* (citation omitted).

As an initial matter, the same principles that exclude consolidation of antitrust class actions with government cases under 28 U.S.C. § 1407(g) should apply here.  Plaintiff should not be permitted to make an end run around that statute and relate his case to the Government Action.

In addition, the Government Action against Google challenges ***different conduct*** in ***different relevant markets*** with ***different competitive effects*** than those challenged in Plaintiff's Complaint.  Specifically, the Government alleges that "Google is a monopolist in the general search services, search advertising, and general search text advertising markets," and that absent Google's conduct, "dynamic competition for general search services would lead to higher quality search, increased consumer choice, and a more beneficial user experience" in these markets. Government Compl. ¶¶ 111, 171.  In contrast, Plaintiff challenges ***no*** conduct relating to the Government's alleged general search services, search advertising, or general search text advertising markets, and instead challenges Google's conduct with respect to the alleged

---

[10] Google's objection, filed with its first motion in this case, is timely.  *See* D.D.C. Local Civil Rule 40.5(b)(2).

Android mobile Apps and in-app purchases markets, alleging that Google's conduct resulted in supra-competitive prices in those markets.  Compl. ¶¶ 33-34.

In these circumstances, Plaintiff has not met his "heavy" burden of establishing any basis for relating his case to the Government Action.  *McGahn*, 391 F. Supp. 3d at 119 (citation omitted).  The mere fact that Google is the defendant in both actions is not sufficient grounds to relate the cases.  *See Keepseagle v. Glickman*, 194 F.R.D. 1, 3 (D.D.C. 2000) (denying relation where "the only relationship between this case and the *Pigford* case is that both sets of plaintiffs are farmers who are members of protected classes and both complain of similar discrimination at the hands of the Department of Agriculture").

## VI.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court transfer this action to the U.S. District Court for the Northern District of California.

Dated: November 23, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

/s/ Bryan M. Killian (D.C. Bar No. 989803)
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: 202.373.6191
Fax: 202.739.3001
Email: bryan.killian@morganlewis.com

Richard S. Taffet (*pro hac vice* application filed)
101 Park Avenue
New York, NY 10178-0060
Telephone: 212.309.6000
Facsimile: 212.309.6001
Email: richard.taffet@morganlewis.com

Willard K. Tom (D.C. Bar No. 297564)
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: 202.739.3000
Facsimile: 202.739.3001
Email: willard.tom@morganlewis.com

Brian C. Rocca (*pro hac vice* application filed)
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Telephone: 415.442.1000
Facsimile: 415.442.1001
Email: brian.rocca@morganlewis.com

*Attorneys for Defendants*