**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE GOOGLE INC., ANTITRUST LITIGATION** | **MDL No. 2981**

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF J. JACKSON PAIGE'S
MOTION FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.           **INTRODUCTION** ........................................................................................... 1

II.          **BACKGROUND** ............................................................................................ 2

      A.    **Epic Games Action Regarding Google Play Store** ................................ 2

      B.    **Additional Actions in the Northern District of California** ..................... 3

      C.    **Connections to the Northern District of California** ............................ 6

      D.    **Paige's Follow-On Action** .................................................................... 7

      E.    ***In re Google Digital Advertising Antitrust Litigation*** ......................... 8

III.         **ARGUMENT** ................................................................................................ 9

      A.    **Centralization In The District of Columbia Is Not Necessary Or Appropriate Under § 1407; Transfer Under § 1404(a) Is A Superior Alternative** .............. 9

      B.    **Centralization In The District of Columbia Is Not Supported By Paige's Inclusion Of *Digital Advertising* In His Motion** ................................................. 16

      C.    **Paige Offers No Credible Contrary Arguments To Justify A Disruption And Transfer Of The Already-Coordinated Google Play Actions Pending In the Northern District of California** ..................................................................... 17

IV.        **CONCLUSION** ............................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*,
  571 U.S. 49 (2013)..........................................................................................................11, 14

*In re ATM Interchange Fee Antitrust Litig.*,
  350 F. Supp. 2d 1361 (J.P.M.L. 2004)..........................................................................15, 18

*Azima v. PAK Inv. Authority*,
  926 F. 3d 870 (D.C. Cir. 2019) ..............................................................................................11

*In re Capacitors Antitrust Litig. (No. II)*,
  223 F. Supp. 3d 1340 (J.P.M.L. 2016).......................................................................9, 10, 18

*Cont'l Grain Co. v. The FBL-585*,
  364 U.S. 19 (1960)..................................................................................................................13

*D&S Consulting, Inc. v. Kingdom of Saudi Arabia*,
  961 F.3d 1209 (D.C. Cir. 2020) ...........................................................................................11

*Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*,
  856 F. Supp. 2d 186 (D.D.C. 2012) ......................................................................................14

*Feldman v. Google, Inc.*,
  513 F. Supp. 2d 229 (E.D. Pa. 2007) ..............................................................................11, 12

*In re Fresh Prods. Antitrust Litig. (No. III)*,
  190 F. Supp. 3d 1353 (J.P.M.L. 2016)...................................................................................18

*In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*,
  899 F. Supp. 2d 1378 (J.P.M.L. 2012)...................................................................................10

*Gipson v. Wells Fargo & Co.*,
  563 F. Supp. 2d 149 (D.D.C. 2008) ......................................................................................11

*Gulf Restoration Network v. Jewell*,
  87 F. Supp. 3d 303 (D.D.C. 2015) (Mehta, J.).........................................................12, 14, 15

*Person v. Google Inc.*,
  456 F. Supp. 2d 488 (S.D.N.Y. 2006)....................................................................................12

*In re Petrobras Sec. Litig.*,
  222 F. Supp. 3d 1345 (J.P.M.L. 2016)..............................................................................15, 18

*In re Republic W. Ins. Co. Ins. Coverage Litig.*,
    206 F. Supp. 2d 1364 (J.P.M.L. 2002)................................................................10, 15

*Song fi, Inc. v. Google Inc.*,
    72 F. Supp. 3d 53 (D.D.C. 2014) ........................................................................11, 12

*Stevenson v. Delta Airlines, Inc.*,
    251 F. Supp. 3d 265, 268 (D.D.C. 2017) (Mehta, J.)...............................................14

*Stockbridge-Munsee Cmty. v. United States*,
    593 F. Supp. 2d 44 (D.D.C. 2009) ........................................................................12, 13

*In re: Tyson Foods, Inc., Meat Processing Facilities Fair Labor Standards Act
    (FLSA) Litig.*,
    581 F. Supp. 2d 1374 (J.P.M.L. 2008)......................................................................17

*In re Xytex Corp. Sperm Donor Prods. Liability Litig*,
    223 F. Supp. 3d 1351 (J.P.M.L. 2016).......................................................................15

**Statutes**

28 U.S.C. § 1391(b)(1) ...........................................................................................14

28 U.S.C. § 1404(a) ..........................................................................................*passim*

28 U.S.C. § 1407...............................................................................................*passim*

28 U.S.C. § 1407(a) ................................................................................................17

28 U.S.C. § 1407(g) ..........................................................................................2, 5, 8

**Other Authorities**

Northern District of California Local Civil Rule 3-2(c) ...............................................6

Federal Rule of Civil Procedure 12 ..............................................................................9

Federal Rule of Civil Procedure 12(b)(6) ....................................................................5

J.P.M.L. Rule of Procedure 6.1(c) ...............................................................................1

United States District Courts – National Judicial Caseload Profile,
    https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile06
    30.2020.pdf ...........................................................................................................13

## I.    <u>INTRODUCTION</u>

Pursuant to Rule 6.1(c) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation (the "Panel"), Defendants Alphabet Inc., Google LLC, Google Ireland Limited, Google Commerce Ltd., Google Payment Corp., and Google Asia Pacific Pte. Ltd. (collectively, "Google") hereby oppose Plaintiff J. Jackson Paige's ("Paige") motion to centralize the actions listed on his Corrected Schedule of Actions (the "Motion").

Centralization as proposed by Paige is not necessary for the convenience of the parties or to further the just and efficient conduct of litigation.  Paige filed his action in the District of Columbia focused on the Google Play Store months after all but one of the cases he now seeks to centralize had already been filed in the Northern District of California.  Those cases are coordinated and proceeding briskly, with Judge Donato of the Northern District of California having entered various case management, consolidation and discovery orders to help facilitate their orderly management.  Paige also filed his action in the District of Columbia even though he agreed to a binding forum selection clause designating Santa Clara County, which sits in the Northern District of California, as the *exclusive* forum to litigate disputes related to Google Play and other Google services.  As a matter of law, such a forum selection clause is accorded controlling weight for purposes of a motion to transfer under 28 U.S.C. § 1404(a), and it is a primary ground for Google's pending § 1404(a) motion to transfer Paige's case to the Northern District of California.  Especially in light of the controlling weight of the forum selection clause, Google's § 1404(a) motion stands more than a reasonable prospect of being granted.  Based on the pending cases, a motion to transfer *Paige* is the most efficient means to eliminate the multidistrict character of this action, which resulted from Paige's isolated filing of his case in the District of Columbia.  That alone supports denial of Paige's § 1407 motion.

Paige cannot meet his heavy burden of demonstrating the necessity of § 1407 centralization in the District of Columbia for additional reasons.

*First*, although Paige seeks centralization in the District of Columbia, neither his case nor those he seeks to centralize have any apparent connection with that forum. Paige is a Michigan resident; Google is headquartered in the Northern District of California; and no conduct is alleged to have occurred in the District of Columbia. Moreover, the vast majority (94%) of Google's employees who are part of the Google Play organization in the United States are based in the Northern District of California.

*Second*, the absence of any connection with the District of Columbia is reinforced by Paige's amendment to the instant Motion to withdraw his request to transfer, consolidate, or coordinate his action with *United States v. Google*, No. 1:20-cv-03010-APM (D.D.C.) (the "Government Action"). Paige's amendment resulted, apparently, from his belated recognition that centralization with the Government Action is not permitted under 28 U.S.C. § 1407(g).

*Third*, one of the cases now pending in the Northern District of California that Paige seeks to have centralized in the District of Columbia, *In re Google Digital Advertising Antitrust Litigation*, No. 5:20-cv-03556-BLF (N.D. Cal.), involves entirely different issues of fact and law and has no material overlap with his action besides Google being a common defendant.

In sum, to the extent cases identified by Paige share common issues of fact and law, they are pending in only two forums—Paige's case in the District of Columbia, and all others in the Northern District of California. This only makes Paige's burden heavier to demonstrate that centralization is necessary as the last resort. He has not, and cannot, make any such showing.

The Panel should deny the Motion.

## II.    <u>BACKGROUND</u>

### A.    **Epic Games Action Regarding Google Play Store**

Epic Games filed an antitrust action against a number of Google entities on August 13, 2020 in the Northern District of California.  Ex. A, ECF No. 1-3 (*Epic* Complaint).  Epic Games, a software application ("App") Developer and a purported potential competitor in App distribution and payment processing to Google, alleged that Google violated federal and state antitrust laws by forcing App Developers to use the Google Play Store to distribute Apps and in-App content, and by demanding a 30% service fee, thereby purportedly foreclosing competition in app distribution and in-app payment processing.  *Id.* ¶¶ 23-24, 26.

### B.    Additional Actions in the Northern District of California

Within days of Epic Games filing its complaint, putative class actions involving common issues of fact and law with the *Epic Games* case were filed against Google in the Northern District of California.  These cases likewise challenged Google's conduct in connection with its Google Play Store under federal and state antitrust laws.  On August 16, 2020, a putative consumer class action was filed in the Northern District of California, *Carr v. Google LLC*, No. 3:20-cv-05761-JD (N.D. Cal.), alleging essentially the same claims against Google as alleged in *Epic Games*.  Ex. B, ECF No. 1-4 (*Carr* Dkt. and Compl.).

On August 17, 2020, a putative App Developer class action was filed, *Pure Sweat Basketball, Inc. v. Google LLC*, No. 3:20-cv-05792-JD (N.D. Cal.), alleging similar claims based on the same alleged conduct as in *Epic Games* and *Carr*.  Ex. C, ECF No. 1-5 (*Pure Sweat Basketball* Dkt. and Compl.).  On September 29, 2020, another putative App Developer class action was filed in the Northern District of California, *Peekya App. Services, Inc. v. Google LLC*, No. 3:30-cv-06772-JD (N.D. Cal.)*.  Ex. D, ECF No. 1-6 (*Peekya* Dkt. and Comp.).

Four additional putative consumer class actions were filed in October and November and consolidated with cases pending before Judge Donato.  *Bentley v. Google LLC*, No. 3:20-cv-07079-JD (N.D. Cal. filed Oct. 9, 2020); *McNamara v. Google LLC*, No. 3:20-cv-07361-JD

(N.D. Cal. filed Oct. 20, 2020); *Herrera v. Google LLC*, No. 3:20-cv-07365-JD (N.D. Cal. filed Oct. 20, 2020); and *Carroll v. Google LLC*, No. 3:20-cv-07379-JD (N.D. Cal. filed Oct. 21, 2020).  Ex. E, ECF No. 1-7 (*Bentley* Dkt. and Compl.); Ex. F, ECF No. 1-8 (*McNamara* Dkt. and Compl.); Ex. G, ECF No. 1-9 (*Herrera* Dkt. and Compl.); Ex. H, ECF No. 1-10 (*Carroll* Dkt. and Compl).

All of these cases—*Epic Games*, *Carr*, *Pure Sweat Basketball*, *Peekya*, *Bentley*, *McNamara*, *Herrera*, and *Carroll*—are now before Judge James Donato of the Northern District of California.  Rocca Decl. ¶ 4; Rocca Decl., Ex. J (Stipulation and Proposed Scheduling Order); Rocca Decl., Ex. L (Order by Judge Donato to Consolidate Cases).  Motion practice and discovery have already commenced.  Rocca Decl., Ex. K (Defendants' Motion to Dismiss).

Another, unrelated putative class action was filed earlier (on May 27, 2020) in *In re Google Digital Advertising Antitrust Litigation*, No. 5:20-cv-03556-BLF (N.D. Cal.) ("*Digital Advertising*").  Ex. I, ECF No. 1-11 (*In re Google Digital Advertising Antitrust Litigation* Dkt. and Compl.).  That case, however, involves different fact and legal issues than the cases involving the Google Play Store.  *See infra*, Section II.E.

Paige seeks to centralize all of these Northern District of California cases, along with his own.[1]  Paige originally also sought to centralize these cases, and his own, with the Government

---

[1] Subsequent to Paige's motion four additional putative consumer class actions have been filed, all alleging facts and legal issues common to the pending Google Play complaints.  These are not included in Paige's Motion.  All of these cases were filed in the Northern District of California: *Roberts v. Google LLC*, No. 4:20-cv-07824-DMR (N.D. Cal. filed Nov. 5, 2020); *Gamble v. Google LLC*, No. 5:20-cv-07984 (N.D. Cal. filed Nov. 12, 2020); *Stark v. Google LLC*, No. 4:20-cv-08309 (N.D. Cal. filed Nov. 24, 2020); and *Esquivel v. Alphabet Inc.*, No. 5:20-cv-8337 (N.D. Cal. filed Nov. 25, 2020).  Rocca Decl. ¶¶ 4, 11-14.  *Esquivel* was originally filed in the Central District of California, but was voluntarily dismissed and re-filed in the Northern District of California.  Judge Donato entered an order consolidating *Gamble* with the other Google Play cases, and motions to relate *Roberts* and *Stark* are pending before him.  *Id.* ¶¶ 11, 13, 19.

Action.  As noted, however, he amended his § 1407 motion once he was advised that such centralization is not permitted under § 1407(g).

With respect to the nine cases already before him involving common antitrust claims involving Google's Play Store, Judge Donato has managed the related cases and encouraged voluntary cooperation to promote litigation efficiencies, which to date has been successful. Judge Donato held two conferences on October 8, 2020 and October 29, 2020, with another scheduled on December 3, 2020.  Rocca Decl. ¶¶ 5, 16.  Judge Donato also entered orders regarding coordination of discovery and discovery of electronically stored information.  *Id.* ¶ 5. He also ordered consolidation of the two pending putative App Developer class actions for all purposes, and they have filed an Amended Consolidated Complaint.  Ex. C, ECF No. 1-5 (*Pure Sweat Basketball*).  Judge Donato has likewise consolidated the two initial consumer class actions for all purposes, and has directed consumer class counsel for all pending *and incoming* putative consumer class actions to propose a plan for consolidation into a single action.  Ex. B, ECF No. 1-4 (*Carr*); Rocca Decl. ¶ 16, Ex. I (Civil Minutes entered by Judge Donato on October 29, 2020).  Currently pending before Judge Donato are a proposed protective order and a case scheduling proposal for all Google Play cases before Judge Donato.  Rocca Decl. ¶ 5.

Pursuant to a stipulated schedule, Google has moved to dismiss under Rule 12(b)(6) the *Epic Games'* complaint and the *App Developers*' consolidated class action complaint.[2]  Rocca Decl., Ex. K (Defendants' Notice of Motion and Motion to Dismiss Complaint).  Google will move to dismiss under Rule 12(b)(6) the *Consumers'* consolidated class action complaint once filed.  Rocca Decl. ¶ 7.  The parties recently exchanged initial disclosures.  Rocca Decl. ¶ 17.

---

[2] The putative consumer class plaintiffs have all been ordered to file a second consolidated complaint by December 28, 2020.  Rocca Decl. ¶ 7.

### C.     Connections to the Northern District of California

It is unsurprising that *all* Google Play-related actions—except for Paige's—have been filed in the Northern District of California.  App Developers and consumers are bound to litigate there under applicable agreements that include mandatory forum-selection clauses.

Specifically a consumer such as Paige, in order to use the Google Play Store, is required to agree to Google Play Terms of Service, which state that the consumer's use of Google Play is subject to the Google Terms of Service.  The Google Terms of Service include a mandatory forum-selection clause requiring that claims arising from or relating to Google Play must be "litigated ***exclusively*** in the federal or state courts of Santa Clara County, California, USA." Rocca Decl., Ex. C (Cooper § 1404 Decl.) at ¶¶ 7-11; Rocca Decl., Ex. C (Ex. A to Cooper § 1404 Decl.).[3]

Google's connections with the Northern District of California, specifically in relation to Google Play, are extensive.  Its Mountain View headquarters, which includes offices in neighboring Sunnyvale (collectively referred to as "Mountain View"), is the strategic center of Google's business, including Google Play.  Rocca Decl., Ex. B (Friedland § 1404 Decl.) at ¶ 3. In October 2020, the Mountain View headquarters housed approximately 39,621 employees.  *Id.* In October 2020, Google also had approximately 10,280 other employees in San Francisco, California and other smaller offices also within the Northern District of California.  *Id.*  As of October 2020, approximately 60% of Google's approximately 83,253 total U.S. employees, including engineers, product managers, marketers, executives, and staff, are based in the

---

[3] Santa Clara County is in the Northern District of California, and Northern District of California Local Civil Rule 3-2(c) provides that antitrust class actions are assigned on a district-wide basis.

Northern District of California.  *Id.*  Of employees who are part of the Google Play organization in the United States, approximately 94% are in the Northern District of California.  *Id.* at ¶ 4.

### D.    Paige's Follow-On Action

On October 30, 2020, Paige filed his complaint in the District of Columbia, more than two months after the complaints by *Epic Games*, a putative App Developer class, and a putative consumer class action were filed in the Northern District of California.  His complaint includes the **same alleged theories** challenging the **same alleged conduct** in the **same alleged relevant antitrust markets** and the **same alleged competitive effects** as the complaints already pending Northern District of California Google Play Store cases.

Thus, like the Northern District of California plaintiffs, Paige alleges:

- Claims against Google under Section 2 of the Sherman Act for monopolization and attempted monopolization of the alleged "U.S. market for mobile apps and in-app purchases sold in the Android Mobile App Market" through Google Play Store;[4]

- Google allegedly harmed competition by hindering users from accessing, and App Developers from distributing their Apps through, App stores that compete against the Google Play Store;[5] and

---

[4] *Compare, e.g.*, Ex. K, ECF No. 1-13 (*Paige*) ¶¶ 52-53, 66-67, *with* Ex. B, ECF No. 1-4 (*Carr*) ¶¶ 134-41, 157-64 (alleging § 2 claims for unlawful monopoly maintenance in the Android App distribution and Android in-App payment processing markets), *and* Ex. F, ECF No. 1-8 (*McNamara*) ¶¶ 51-77 (alleging § 2 claim for monopolization and attempted monopolization of the U.S. market for mobile Apps and in-App purchases sold in the Android Mobile App market), *and* Ex. G, ECF No. 1-9 (*Herrera*) ¶¶ 57-67 (alleging § 2 claim for unlawful monopolization of the Android mobile App distribution market), *and* Ex. H, ECF No. 1-10 (*Carroll*) ¶¶ 132-39, 155-62 (alleging § 2 claim for unlawful monopolization of licensable smart mobile OS App distribution and in-app payment processing markets).

[5] *Compare, e.g.*, Ex. K, ECF No. 1-13 (*Paige*) ¶ 53, *with* Ex. B, ECF No. 1-4 (*Carr*) ¶¶ 86, 88 (alleging Google prohibits distribution of competing App stores through the Google Play Store and imposes impediments to dissuade users from direct downloads of Apps), *and* Ex. F, ECF No.

- Google's conduct allegedly resulted in consumers having to pay supracompetitive prices to purchase Apps and in-App content through the Google Play Store.[6]

Soon after filing his complaint in the wrong venue, Paige filed the instant motion.  ECF No. 1.  Paige amended the motion on November 13, 2020 to eliminate his legally defective request to centralize the Northern District of California cases in the District of Columbia with the Government Action "[i]n recognition of 28 U.S.C. § 1407(g)."  Pl.'s Supplemental Information, ECF No. 11.  Thus, the ***sole*** connection with the District of Columbia is Paige's case itself.  And Paige, himself, is a Michigan resident.

### E.    *In re Google Digital Advertising Antitrust Litigation*

*In re Google Digital Advertising Antitrust Litigation* is a separate litigation, on behalf of a separate putative class, which has been ongoing in the Northern District of California since its filing in May 2020.  Plaintiffs in *Digital Advertising* are advertisers who allege that Google has unlawfully acquired and maintained a monopoly in an alleged market for "online display advertising services."  Motion Ex. I ¶¶ 117, 158.

This separate litigation, about alleged conduct wholly distinct from that alleged in the Google Play cases, is assigned to Judge Beth Labson Freeman of the Northern District of California.  *See* No. 20-cv-3556-BLF (N.D. Cal.).  In pretrial proceedings to date, Judge

---

1-8 (*McNamara*) ¶ 26 (same), *and* Ex. G, ECF No. 1-9 (*Herrera*) ¶¶ 26-27 (same), *and* Ex. H, ECF No. 1-10 (*Carroll*) ¶ 136 (same).

[6] *Compare, e.g.*, Ex. K, ECF No. 1-13 (*Paige*) ¶¶ 8, 33, *with* Ex. B, ECF No. 1-4 (*Carr*) ¶¶ 124-25 (alleging "supra-competitive prices for Android Apps" and "supra-competitive prices for in-app digital content"), *and* Ex. F, ECF No. 1-8 (*McNamara*) ¶ 34 (alleging payment of "supra competitive price [sic] for mobile apps and in-app purchases"), *and* Ex. G, ECF No. 1-9 (*Herrera*) ¶ 49 (alleging antitrust injury from paying "supracompetitive prices for mobile app and in-app purchases"), *and* Ex. H, ECF No. 1-10 (*Carroll*) ¶¶ 120-21 (alleging payment of "supra-competitive prices" in App distribution and in-App payment processing markets).

Freeman set a schedule for the filing of a consolidated complaint among competing complaints filed in that district (No. 20-cv-3556-BLF (N.D. Cal.), ECF 25 (Aug. 11, 2020)); set a Rule 12 briefing schedule for that consolidated complaint (*id.*); and held a Case Management Conference (No. 20-cv-3556-BLF (N.D. Cal.), ECF 32 (Sept. 24, 2020)).  The consolidated complaint on behalf of several plaintiffs was filed on September 25, 2020.  Motion Ex. I.  Rule 12 briefing commenced on November 9, 2020.  (No. 20-cv-3556-BLF (N.D. Cal.), ECF 41 (Nov. 9, 2020)). There are no cases making the same allegations pending in other courts.[7]

## III.   **ARGUMENT**

### A.   **Centralization In The District of Columbia Is Not Necessary Or Appropriate Under § 1407; Transfer Under § 1404(a) Is A Superior Alternative**

To convenience the parties and witnesses and promote the just and efficient conduct of litigation, "'centralization under Section 1407 should be the last solution after considered review of all other options.'"  *In re Capacitors Antitrust Litig. (No. II*), 223 F. Supp. 3d 1340, 1342 (J.P.M.L. 2016) (quoting *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)).  Here, even a cursory review reveals that a superior option exists to eliminate the multidistrict character of the relevant cases, and that centralization in the District of Columbia under § 1407 is unnecessary.

Transfer under § 1404(a) is a "particularly advantageous" and superior option in current circumstances.  There is no question that, with the exception of one case sought to be centralized, Paige's complaint shares common issues of law and fact with those previously (and

---

[7] Two plaintiffs at different points brought similar claims in the District for the District of Columbia, but subsequently voluntarily dismissed their claims without prejudice.  *See Grand Atlas LLC v. Google LLC, et al.*, No. 20-cv-03057, ECF No. 7 (D.D.C. Nov. 6, 2020); *Royal Disposable Medical & Safety Supplies, Inc. vs. Google LLC, et al.*, No. 20-cv-3291, ECF No. 5 (D.D.C. Nov. 20, 2020)

subsequently) filed in the Northern District of California, all but one of which are now consolidated with and related to each other and pending before Judge Donato.  Transfer under § 1404(a) will be for all purposes; and, once transferred, per Judge Donato's existing order the *Paige* action will be consolidated with the other pending putative consumer class actions for all pretrial (and potentially, trial) purposes.  Thus, in contrast to centralization under § 1407, transfer of the *Paige* case to the Northern District of California will streamline proceedings: there will be coordinated pretrial proceedings, there will be no need to remand cases to the transferor court, and increased costs associated with multiple trials will be avoided.  These considerations alone establish significant advantages of permitting a § 1404(a) transfer of the *Paige* case to the Northern District of California, as compared to centralization of all of the Northern District of California cases with *Paige* in the District of Columbia.  *Capacitors*, 223 F. Supp. 3d at 1342; *see In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012) ("We previously have denied centralization where there is a 'reasonable prospect' that the resolution of Section 1404 motions could eliminate the multidistrict character of the actions before us." (citation omitted)).

Moreover, Google's pending § 1404(a) motion pending in the D.C. District Court to transfer the *Paige* case to the Northern District of California has far more than a "reasonable prospect" of success.  This makes it a more efficient vehicle to eliminate the multidistrict character of these disputes than centralization under § 1407.  *See Gerber*, 899 F. Supp. 2d. at 1379; *In re Republic W. Ins. Co. Ins. Coverage Litig.*, 206 F. Supp. 2d 1364, 1365 (J.P.M.L. 2002).

Most notably with respect to the likelihood of Google succeeding on its § 1404 motion, although the Panel is not bound by a forum selection clause, a proper application of § 1404(a)

requires that, other than in the most exceptional circumstances, "controlling weight" be given to a mandatory forum selection clause like the one to which Paige agreed, designating a forum as the "exclusive" jurisdiction for a plaintiff to bring his complaint.  *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 59-60 (2013); *see also D&S Consulting, Inc. v. Kingdom of Saudi Arabia*, 961 F.3d 1209, 1213 (D.C. Cir. 2020) (explaining in connection with motion to dismiss for *forum non conveniens* that "[i]n the case of a mandatory clause, a court will enforce the clause except in the 'most unusual or rare' instance . . . ."); *Azima v. PAK Inv. Authority,* 926 F. 3d 870, 874 (D.C. Cir. 2019) (explaining in connection with motion to dismiss for *forum non conveniens* that a forum-selection-clause "must almost always" be enforced).  This extends even to forum-selection clauses included in terms of service and non-negotiated clauses.  *E.g.*, *Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149, 154 (D.D.C. 2008) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

The forum selection clause is also reasonable, diminishing Paige's ability to meet his burden of showing that other factors "overwhelmingly disfavor a transfer."  *Atl. Marine,* 571 U.S. at 67.  It closely parallels mandatory language in analogous Google forum-selection clauses that have been held valid and enforceable in the context of motions to transfer under 28 U.S.C. § 1404(a).  In *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 56-57 (D.D.C. 2014), for example, the D.C. District Court, where Google's § 1404(a) motion is pending, enforced a forum-selection clause in YouTube's Terms of Service, "which provide[d] that '[a]ny claim or dispute between you and YouTube that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Santa Clara County, California.'"  In so holding, the Court pointed out that "Google and YouTube's choice of forum has been found consistently enforceable," *id.* at 63, citing *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 246-48 (E.D. Pa.

2007) and *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493-95 (S.D.N.Y. 2006), where similar forum-selection clauses were also enforced.  The Court in *Song fi* also explained that Google had valid reasons for the type of forum-selection clause addressed there, given that hundreds of millions of users around the world use YouTube, making the clause necessary to manage litigation costs and reduce the burden of litigating all over the world.  72 F. Supp. 3d at 64 (citations omitted).

The same rationale applies here; millions of users in the United States use Google Play to access apps and in-app services, and the forum-selection clause incorporated in the Google Play Terms of Service should be held valid and enforceable like the clause addressed in *Song fi* and other cases considering analogous Google forum-selection clauses.

Nor can Paige rely on public interest factors relevant to a § 1404(a) motion to overcome the controlling weight of the forum selection clause.  Under law applicable to Google's motion, all such factors weigh in favor of transfer of *Paige* from the District of Columbia to the Northern District of California.

- The Northern District of California has significant familiarity and expertise with antitrust law and the specific claims alleged in this case.  This supports transfer.  *See Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 311 (D.D.C. 2015) (Mehta, J.) (explaining that a relevant public-interest factor is "the transferee court's familiarity with the governing laws" (citation omitted)).

- The pending antitrust cases in the Northern District of California alleging parallel claims and theories of liability not only confirm that forum's familiarity with the legal issues in play, they also show that transferring Paige's case will serve the public interest by avoiding potential "inconsistent results and waste of judicial resources."  *Stockbridge-*

*Munsee Cmty. v. United States*, 593 F. Supp. 2d 44, 48 (D.D.C. 2009) (transferring

action to forum where six challenges to the same action were pending); *see also Cont'l*

*Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two

cases involving precisely the same issues are simultaneously pending in different District

Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed

to prevent.").

- The relative congestion of dockets factor is neutral.  Although the median time from

  filing to disposition in civil cases in the twelve-month period ending June 30, 2020, was

  10.1 months in the Northern District of California, and 5.3 months in the District of

  Columbia, the median time from filing to trial was 29.3 months in the Northern District

  of California, and 40.0 months in the District of Columbia.[8]

- The proceedings in the Northern District of California have already progressed with

  motions to dismiss pending, discovery underway, consolidations of cases through trial,

  and continuing, active supervision of the cases by the Court.

- Finally, no showing can be made in this case that the District of Columbia has a local

  interest in deciding a local controversy.  Paige's Complaint defeats any showing by

  confirming that he is not a resident of this forum, that Google's principal place of

  business and the vast majority of its relevant witnesses are in the Northern District of

  California, and that no conduct is alleged to have occurred in this forum or involve any

  controversy localized to the Washington, D.C.-area.  Rocca Decl., Ex. B (Friedland

  § 1404 Decl.) at ¶¶ 4-6.

---

[8] United States District Courts – National Judicial Caseload Profile,
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf.

Moreover, private interest factors that would normally be considered on a § 1404(a) motion are not considered when, as here, there is a forum selection clause.  "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  *Atl. Marine*, 571 U.S. at 64.  A plaintiff's choice of forum is accorded no weight, and "[a] court . . . must deem the private-interest factors to weigh entirely in favor of the preselected forum."  *Id.* at 64.  But even if such factors were considered, they too weigh strongly in favor of transfer.

- There is no question that Paige could have filed the action in the Northern District of California.  *See Stevenson v. Delta Airlines, Inc.*, 251 F. Supp. 3d 265, 268 (D.D.C. 2017) (Mehta, J.) (explaining that "[t]he court first must determine whether the transferee district is one where the action 'might have been brought'" (citation omitted)).  Other plaintiffs filed complaints in that district where Google's principal place of business is located.  *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]").

- Other than the fact that Paige filed his complaint in the District of Columbia, his case has no connection with that forum.  Paige is a Michigan resident who does not allege that any conduct relevant to his claims took place in the District of Columbia.  Ex. K, ECF No. 1-13 (*Paige*) ¶ 8.  This diminishes any deference his choice of forum deserves.  *Stevenson*, 251 F. Supp. 3d at 269 (citing *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 192 (D.D.C. 2012)); *see also Gulf Restoration*, 87 F. Supp. 3d at

312 (citing cases for the proposition that "[t]his court consistently has shown less deference to entities that chose this forum but did not reside here").

- Google, on the other hand, has its principal place of business in the Northern District of California, and that forum is more convenient to access proof from Google and for Google witnesses. *See* Rocca Decl., Ex. B (Friedland § 1404 Decl.) at ¶¶ 3-4, 7. Convenience for Paige and third parties is neutral; Paige is resident in neither, and third parties are located throughout the world. *See, e.g.*, Ex. K, ECF No. 1-13 (*Paige*) ¶ 20 (discussing Android OS adoption by, and Google's alleged agreements with, LG and Samsung).

- Google's preference for the Northern District of California is legitimate. This also weighs in favor of transfer. *See Gulf Restoration*, 87 F. Supp. 3d at 313 ("A defendant's 'choice of forum must be accorded some weight' if the defendant presents legitimate reasons for preferring to litigate the case in the transferee district.'" (citation omitted)). Google is now facing claims in twelve other actions pending in the Northern District of California that involve the same conduct and theories as Paige alleges. This Panel has denied § 1407 centralization in these circumstances. *See, e.g.*, *In re ATM Interchange Fee Antitrust Litig.*, 350 F. Supp. 2d 1361, 1362-63 (J.P.M.L. 2004); *In re Republic W. Ins. Co. Ins. Coverage Litig.*, 206 F. Supp. 2d at 1365. Indeed, Paige's burden of showing the superiority of § 1407 centralization is even heavier in these circumstances where multiple cases are pending in one forum and a single case—the subject of a § 1404(a) transfer motion—is pending in another forum. *See In re Xytex Corp. Sperm Donor Prods. Liability Litig.*, 223 F. Supp. 3d 1351, 1352 (J.P.M.L. 2016); *In re Petrobras Sec. Litig.*, 222 F. Supp. 3d 1345, 1345-46 (J.P.M.L. 2016).

-15-

For all of these reasons, Google's § 1404(a) motion to transfer *Paige* from the District of Columbia to the Northern District of California has more than a reasonable prospect of success, This makes such a transfer a far superior option to address the multidistrict character of the action before the Panel than centralization in the District of Columbia as requested by Paige under § 1407.[9]

### B.   Centralization In The District of Columbia Is Not Supported By Paige's Inclusion Of *Digital Advertising* In His Motion

Paige's inclusion of the unrelated *Digital Advertising* case does not change this conclusion.  The *Digital Advertising* case is wholly separate from the Google Play cases, including the *Paige* action, and there is no overlap, much less sufficiently material overlap to warrant any section 1407 consolidation.

The fact that the cases do not share common questions of fact is evident on the face of the respective complaints:  The *Paige* action, like the actions pending in the Northern District of California on which it is based, is focused entirely on the Google Play Store.  By contrast, the consolidated complaint in the *Digital Advertising* action mentions Google Play only once, and only to note that it is one of several products upon which display advertising is available.  Motion, Ex. I ¶ 37.  There are no allegations in *Digital Advertising* as to any conduct concerning Google Play, and the putative class definition makes no reference to Google Play subscribers.

---

[9] In the alternative, Google respectfully submits that if the Panel concludes that centralization is appropriate, the Northern District of California is the most appropriate forum for centralization, and centralization should not include unrelated cases such as *Digital Advertising*.  As discussed herein, except for Paige's case, all of the Google Play cases are already pending in the Northern District of California, and they include the earliest-filed and are the most procedurally advanced. The Northern District of California also is the most convenient forum for the vast majority of Google's witnesses.

*Id.* ¶ 146.  Plaintiffs in *Digital Advertising* instead allege—as to "online display advertising services"—unlawful tying, anticompetitive acquisition of rivals, denial of interoperability, restrictions on access to certain information, and auction rigging.  *Id.* ¶ 158.  Nothing of the kind is alleged in the Google Play cases.

Nowhere in the petition does Paige identify any specific basis to centralize these separate litigations; he simply says they are both antitrust cases where various (different) putative classes seek (different) damages and (different) injunctive relief.  Motion at 6.  The reality is that the only commonality between these two cases is that Google is the defendant.  But of course, that does not mean that the cases share any material common questions of fact warranting centralization.  The cases center on different Google products and entirely different alleged conduct.  *See, e.g., In re: Tyson Foods, Inc., Meat Processing Facilities Fair Labor Standards Act (FLSA) Litig.*, 581 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008) (movants "failed to convince [the Panel] that any common questions of fact among these actions are sufficiently complex and/or numerous to justify Section 1407 transfer").  The cases also involve separate putative classes.  *Id.*  Whatever conceivable minor factual overlap between the cases might exist therefore holds no prospect of furthering "the convenience of parties and witnesses" or "promot[ing] the just and efficient conduct of [the] actions."  28 U.S.C. § 1407(a).

### C.     Paige Offers No Credible Contrary Arguments To Justify A Disruption And Transfer Of The Already-Coordinated Google Play Actions Pending In the Northern District of California

Paige presents no arguments sufficient to meet his burden of showing that as a last resort centralization under § 1407 is appropriate.

Paige argues centralization is appropriate because there are eleven related actions that would be centralized in the District of Columbia.  Pl.'s Mem. 4-5.  This is incorrect.  Where, as here, there are multiple cases pending in one forum, and a single case in a second forum, for

purpose of § 1407 centralization, there are two pending actions, and centralization in the forum where the single case is pending is not supported. *See Petrobras*, 222 F. Supp. 3d at 1345-46 (rejecting centralization and explaining that where twenty-six actions were before the same judge and an action was pending in another district, "[e]ffectively, there are only two actions"). Paige cites no authority to the contrary.

Paige further argues that transfer is necessary to coordinate procedures and prevent inconsistent pretrial rulings. Pl.'s Mem. 6. However, he offers no explanation why centralization will achieve such coordination better than if his case is transferred to the Northern District of California. The transfer will allow his case to be consolidated with the Northern District of California cases, and thereby avoid inefficiencies and additional costs arising from remand of the Northern District of California cases to that forum for trial. He also offers no explanation how centralization will better guard against inconsistent outcomes after trial, when his case will be tried in the District of Columbia and all others in the Northern District of California. And, he also has no explanation how centralizing the *Digital Advertising* case in the District of Columbia will permit greater efficiencies, when it has no factual or legal commonality with his case whatsoever.

Paige also is wrong that antitrust class actions receive special treatment favoring centralization. Pl.'s Mem. 6 (arguing that the Panel has "repeatedly" centralized antitrust class actions). Numerous cases belie that suggestion. *See, e.g.*, *Capacitors*, 223 F. Supp. 3d at 1341-42; *In re Fresh Prods. Antitrust Litig. (No. III)*, 190 F. Supp. 3d 1353, 1355 (J.P.M.L. 2016); *ATM Interchange Fee Antitrust Litig.*, 350 F. Supp. 2d at 1363.

As noted, Paige's position that the District of Columbia is a convenient forum for parties and witnesses is baseless. Pl.'s Mem. 11. His own complaint is to the contrary. He alleges no

relationship of the parties in his own or any of the other Google Play cases to the District of

Columbia.  He is a Michigan resident, and Google's principal place of business in the Northern

District of California.  He alleges no conduct underlying the antitrust claims that are common to

his and the Northern District of California cases that occurred in the District of Columbia.  And

approximately 94% of the employees who are part of the Google Play organization in the United

States are based in the Northern District of California, which is the strategic center of Google

Play.  Rocca Decl., Ex. B (Friedland § 1404 Decl.) at ¶¶ 3-5.

## IV.   **<u>CONCLUSION</u>**

For the foregoing reasons, Google respectfully requests that the Panel deny Paige's

motion under 28 U.S.C. § 1407.

Dated: November 27, 2020

Richard S. Taffet
richard.taffet@morganlewis.com

101 Park Avenue
New York, NY 10178-0060
Telephone:  +1.212.309-6000

Willard K. Tom
willard.tom@morganlewis.com

1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone:  +1.202.739.3000

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Brian C. Rocca*
   Brian C. Rocca
   brian.rocca@morganlewis.com

   Sujal J. Shah
   sujal.shah@morganlewis.com

One Market
Spear Street Tower
San Francisco, CA  94105-1596
Telephone:     +1.415.442.1000

Attorneys for Defendants

## **PROOF OF SERVICE**

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I, Brian C. Rocca, hereby certify that on November 27, 2020, I electronically filed the foregoing document through the CM/ECF systems, which will send a notice of electronic filing to all counsel of record in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of November, 2020 in San Francisco, California.

*/s/ Brian C. Rocca*

Brian C. Rocca